RMSA Danny H. RICKSON, (Service No. 549–90–7748), Petitioner,

v.

Captain J. W. WARD, Commanding Officer, U.S.S. Constellation, and Melvin Laird, Secretary of Defense, Defendants.

Civ. No. 73–5–GT.

United States District Court,
S. D. California.

April 16, 1973.

Terry Amdur, Amdur, Bryson, Caplan & Morton, Marina del Rey, Cal., for petitioner.

Harry D. Steward, U. S. Atty., Howard .A. Allen, Asst. U. S. Atty., San Diego, Cal., for defendants.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW
AND ORDER

GORDON THOMPSON, Jr., District Judge.

The petitioner, a Navy crewmember of the U.S.S. Constellation, filed application

for writ of habeas corpus on January 3, 1973, asking this Court to discharge him from the United States Navy, alleging that he is being unlawfully detained and restrained of his liberty. The gist of his complaint is that he has been denied an administrative discharge based upon certain alleged severe hardships.

Petitioner's application for an order temporarily restraining his deployment to the Western Pacific aboard his ship was denied on January 3, 1973, on the basis that petitioner had failed to show that any irreparable injury would probably result therefrom. Further proceedings in the case were continued to January 22, 1973, but thereafter the parties stipulated to a further continuance to February 26, 1973, to enable petitioner to submit certain information he had previously omitted from his original application for hardship discharge. The matter was ultimately submitted on the pleadings, it appearing that for purposes of its limited scope of review the Court was bound by the record considered by naval authorities.

Having considered the pleadings, the briefs of the parties, and the military record of the petitioner relative to his application for hardship discharge, the Court makes the following findings of fact and conclusions of law.

## I

### FINDINGS OF FACT

1. On September 30, 1971, petitioner voluntarily enlisted in the United States Naval Reserve for a period of six years, two of which he agreed to spend on active duty. At the time of his enlistment the petitioner was married and the father of a four month old girl. The petitioner's mother was deceased and his younger brother, Warren, was living with his father in Redondo Beach, California.

2. On July 14, 1972, petitioner's father died, after which petitioner's 17 year old brother, Warren, went to live with petitioner's wife, Pamela Rickson, in Hermosa Beach, California, and be-

came dependent upon petitioner for support. About the same time petitioner's wife became pregnant with their second child, which is currently expected to be born in the latter part of April 1973.

3. On August 1, 1972, the petitioner reported aboard the U.S.S. Constellation (CVA 64) for sea duty.

4. On August 31, 1972, the petitioner applied for a humanitarian reassignment to shore duty in the vicinity of Long Beach, California, in accordance with Bureau of Naval Personnel Enlisted Transfer Manual (TRANSMAN), Chapter XVIII. As justification for the reassignment, petitioner cited the above mentioned facts concerning his father's recent death, his brother's dependency and his wife's pregnancy. He said that he expected to alleviate this alleged hardship as follows:

"If request is approved, the hardship will be eased a little because I'll be able to keep an eye on my brother and my wife and I will be able to get ahead a little. I also plan to see if I can get a part time job."

In the alternative, petitioner requested a hardship discharge.

5. This request was forwarded to the Chief of Naval Personnel (CNP) by the petitioner's commanding officer with a recommendation of disapproval, citing certain inconsistencies between petitioner's application and information obtained from him during an interview by a Hardship Discharge/Humanitarian Reassignment Board held aboard ship. Among them were apparent errors in his description of his medical status and his financial status. Most significant was the fact that the petitioner had been the beneficiary of his father's $10,000 life insurance policy.

6. By letter dated October 13, 1972, the CNP formally disapproved petitioner's request for humanitarian reassignment but passed the case on to the bureau's Hardship Discharge Board, composed of officer, enlisted and civilian personnel, for consideration. That board denied petitioner's alternative plea

for discharge and petitioner was notified of this by a letter from the CNP dated November 1, 1972. This correspondence included notice that petitioner could apply again for separation "in the event that the hardship upon which you based your request becomes significantly worse."

7. On December 22, 1972, petitioner submitted a second application for humanitarian reassignment/hardship discharge. The renewed application included the following enclosures in support thereof:

(a) A Record of Emergency Data (NAVPERS Form 1070/602), dated September 1, 1972, which indicated that petitioner's brother was dependent upon him and living at petitioner's wife's address in Hermosa Beach, California. This form was included in petitioner's first application for reassignment/discharge.

(b) A History of Assignments Sheet (NAVPERS Form 601–5) which reflected the petitioner's hospitalization during the month of July 1972. This form has also been included in the prior application of August 31, 1972.

(c) A letter from petitioner dated December 12, 1972, in which he renewed his request for reassignment "not only for financial reasons but mostly for emotional reasons." In the letter petitioner added that:

"I honestly feel that if I am gone when our new baby is born [my wife] will crack under the tension."

(d) A letter from petitioner's wife Pamela dated December 12, 1972 wherein she states:

"I desperately want and need [my husband] at home to give me all the emotional support that he can, as well as financial."

(e) Finally, a letter from both petitioner and his wife, dated January 3, 1973, which was forwarded to the CNP on January 4, 1973, for enclosure with the December 22, 1972 request for reassignment. In this document the petitioner attempted to explain how the $10,000 worth of insurance proceeds had been expended, so as to preclude its use in relief of petitioner's claimed financial difficulties. Accepting the document as valid and truthful, however, it specifically accounts for only $5,700.00 of the proceeds. Admittedly, various other and miscellaneous payments are vaguely referred to, allegedly arising from prior doctor bills, in-laws' bills and maintenance of petitioner's brother. Nevertheless, this document failed to accurately account for some $4,300.00 worth of insurance proceeds as of January 3, 1973.

This second request duly proceeded along the same channels as the first, and by letter dated January 19, 1973, the CNP directed petitioner's commanding officer to advise him that his request for transfer/separation had not been considered by the Bureau of Naval Personnel, "since no new documentation was furnished on which to base a reconsideration." Petitioner was again invited to resubmit his application, but cautioned that "such a request should be fully documented, accurately reflect the current situation, specifically indicate how the conditions have deteriorated from those previously presented, and show why [petitioner's] presence is the only practical solution to alleviate the hardship."

8. Finally, in a letter to the CNP dated February 9, 1973, petitioner's counsel informed the Navy that he could "personally verify that the [petitioner's] family has no money, and is greatly in need of financial assistance." This conclusionary remark was not in affidavit form nor otherwise supported by independent evidence. Counsel's letter did include the following enclosures:

(a) A letter from Dr. Louis Silver, of Redondo Beach, California dated January 30, 1973, which states that Mrs. Rickson is expected to deliver on or about April 22, 1973, and adds that:

"She is nervous, is living with her mother under difficult circumstanc-

es and feels she needs her husband home with her as soon as possible."

(b) A letter from Mr. Howard Stern, of Treasure Island, California, dated January 22, 1973, which indicates he would hire the petitioner as a hardware man in his company's boat yard at an hourly wage of $2.50 per hour upon petitioner's release from the Navy.

9. The CNP replied to petitioner's counsel in a letter dated February 16, 1973, wherein reconsideration of petitioner's case was declined on the ground that counsel's letter and the enclosures thereto contained "no new significant information."

## II

## DISCUSSION

Although petitioner filed the instant action on January 3, 1973, the parties stipulated to continue further proceedings until February 26, 1973 to enable the CNP to complete the processing of petitioner's second application for reassignment/discharge and to allow petitioner to submit to the CNP certain additional—and hopefully clarifying—information in support of his case. The reason for this is the open-ended nature of the Navy's hardship discharge procedure. Instead of a mandatory appeal from a denial of reassignment or discharge, the Bureau of Naval Personnel has a practice that allows resubmission of the serviceman's request whenever he feels he has additional information to substantiate that his situation has materially worsened. Since the petitioner here originally claimed that the CNP had grounded his decision of November 1, 1972, on erroneous findings of fact, the Court thought it appropriate to afford the petitioner the opportunity to demonstrate to the CNP where he had in fact erred, rather than decide the matter on an incomplete record. It appearing that the petitioner has submitted whatever evidence he feels is sufficient to warrant the relief he seeks, the Court will now proceed to decision.

At the outset, it should be noted that this Court has previously declared its opinion as to the limits of judicial review of discretionary rulings of the military services. Those limits are narrow indeed. *See* Dellaverson v. Laird, 351 F.Supp. 134, 138 (S.D.Cal. 1972), and cases cited therein. *Dellaverson* concerned an exception to the general rule that such discretionary decisions are not reviewable by the courts. The exception there was a failure by the service involved to adhere to its own regulations. 351 F.Supp. at 138. *See also* Feliciano v. Laird, 426 F.2d 424, 427 (2nd Cir. 1970); Smith v. Resor, 406 F. 2d 141, 145 (2nd Cir. 1969). No such failure is found in this case. A review of the record indicates that prescribed procedures were scrupulously followed and that petitioner was given ample opportunity to present his best case for reassignment/discharge.

The Navy regulation that establishes the authority, justification and procedure for hardship discharges is found in Article 3850240 of the Bureau of Naval Personnel Manual (BUPERSMAN). In pertinent part, Article 3850240 provides:

"1. The Chief of Naval Personnel *may* authorize or direct the discharge or release to inactive duty of enlisted personnel for reason of dependency or hardship. . . .

"2. Enlisted personnel who desire to request discharge or release to inactive duty, as appropriate, for dependency or hardship reasons shall be informed of the proper procedure to follow. *It should be clearly explained to each applicant . . . that submission of a request is no assurance that discharge or release to inactive duty will be authorized.* . . .

"3. Policies governing discharge or release to inactive duty on account of dependency or hardship:

"a. A dependency or hardship discharge or release to inactive duty will not be authorized solely: *for financial or business reasons; for indebtedness;* for personal conven-

ience; because of the member's physical or mental condition . . . .

\* \* \* \* \* \*

"c. The Chief of Naval Personnel *may* direct discharge or release to inactive duty when it is considered that undue and genuine hardship exists, that the hardship is not of a temporary nature, that the conditions have arisen or have been aggravated to an excessive degree since entry into the service, and the member has made every reasonable effort by means of application for basic allowance for quarters and voluntary contributions which have proven inadequate; that the discharge or release of the member will result in the elimination of or will materially alleviate the condition *and that there are no means of alleviation readily available other than by such discharge or release.* . . . Undue hardship does not necessarily exist solely because of altered present or expected income or because the member is separated from his family or must suffer the inconveniences normally incident to military service. *Pregnancy of an enlisted member's wife is not in and of itself a circumstance for which separation from active duty will be authorized.*

"4. . . . All requests must be accompanied by *affidavits* substantiating the dependency or hardship claim. *Where practicable, one affidavit should be from the dependent concerned.* The request should contain the following additional information:

\* \* \* \* \* \*

"e. *Financial statement.* Complete itemized budget for serviceman and/or dependent family members including rent, food, clothing, utilities, fuel, medical expenses, and other regular expenses; list of existing debts including names of creditors, original amount of debt, amount of debt remaining to be paid, amount of monthly payments, date debt contracted and purpose; specific amounts and modes of contributions of serviceman to dependents." (Emphasis added).

■ From the above it clearly appears that petitioner had the burden to demonstrate his hardship to the CNP. It is also apparent that the petitioner has no right to a discharge. The language of the regulation is strictly discretionary in describing the decision to be made by the CNP. It is mandatory, however, with respect to the petitioner's burden of substantiating his claim with affidavits and a complete financial statement, among other information. He has so far failed to meet that burden, despite the additional time granted by this court to do so.

In order to present a *prima facie* case for discharge petitioner was required to show that his family was "undergoing hardships more severe than normally encountered by . . . families of members of the naval service," and that the plaintiff's discharge was the only action that would eliminate or materially alleviate the hardship condition. BUPERSMAN 3850240.3c. In the judgment of the CNP, petitioner's case fell short of the criteria set forth in the regulations and his request for discharge was denied. Petitioner asks this Court to reverse that decision on the ground that it was made arbitrarily and without factual basis.

■ The standard of review to be applied to hardship discharge denials has been variously stated by the few published decisions that have discussed the issue. Some courts have limited their review to determine whether the military's action was arbitrary and capricious. Townley v. Resor, 323 F.Supp. 567, 569 (N.D.Cal.1970); Feliciano v. Laird, *supra;* Nixon v. Secretary of the Navy, 422 F.2d 934, 940 (2nd Cir. 1970). Others have looked for a basis in fact for the denial. Jenkins v. Commandant First Naval District, 303 F.Supp. 1150,

1153 (D.Mass.1969);[1] United States ex rel. Hutcheson v. Hoffman, 439 F.2d 821, 823–824 (5th Cir. 1971). Essentially, the two tests are different sides of the same coin. Without a factual basis any agency action is subject to attack as arbitrary. As District Judge Zirpoli so aptly commented in Townley v. Resor, *supra*:

"As stated earlier, review of a decision of this nature by the court does not justify de novo review, but merely a determination as to whether or not the Army's decision was arbitrary and capricious. Implicit in this is the understanding that the court must have something to review. *Once petitioner has stated a prima facie case for a discharge, the Army must explain, in factual terms, why it is denying the application.* See United States v. Haughton, 413 F.2d 736 (9th Cir. 1969); Goodwin v. Laird, 317 F.Supp. 863 (N.D.Cal.1970). Without such reasons, it is impossible to determine whether or not the decision was arbitrary and capricious, and judicial review becomes meaningless." 323 F. Supp. at 569 (emphasis added).

We note especially Judge Zirpoli's stated precondition, that the petitioner must first state a *prima facie* case for hardship discharge before he can put the military authorities to a detailed factual explanation for its denial. An exhaustive review of all the files and records available to the CNP when he made his adverse decision convinces the Court that no such case was presented by the petitioner. Viewed in its best light, pe-

titioner's claimed hardship consisted of the following:

(1) Petitioner's wife was pregnant with their second child and claimed to need petitioner's moral support;

(2) Petitioner's father had recently died, leaving petitioner's 17 year old brother Warren without parental supervision and financially dependent upon petitioner; and

(3) Petitioner had severe problems of indebtedness.

However, it also appeared from the records forwarded to the CNP that Mrs. Rickson's need for her husband's presence was more emotional than medical. As indicated by Dr. Silver's letter above, she was "living with her mother under difficult circumstances," but she was not totally alone and without help. Compare these facts with Jenkins v. Commandant First Naval District, *supra*, and Feliciano v. Laird, *supra*. Mrs. Rickson's personal desire for her husband's presence was not converted into medical necessity merely through its expression on Dr. Silver's office stationery. Finally, the regulation expressly provides that "Pregnancy of an enlisted member's wife is not in itself a circumstance for which separation from active duty will be authorized." BUPERSMAN 3850240.3c.

The recently added dependency of petitioner's younger brother takes on two aspects, the lack of parental supervision and the need for financial support. As to the first, there was no affirmative showing by petitioner that his presence was needed to fill the gap left by his fa-

---

1. *Jenkins* alternatively held that the military's denial was not supported by "substantial evidence." This test was apparently derived from Sanford v. United States, 399 F.2d 693 (9th Cir. 1968) and Stephens v. United States, 358 F.2d 951 (Ct.Clms.1966), cited by the court, 303 F.Supp. at 1153. Both *Sanford* and *Stephens*, however, concerned reviews of actions taken by the Army Board for Correction of Military Records, a creature of 10 U.S.C. § 1552(a). Insofar as the substantial evidence test might be thought to expand the scope of review of strictly discretionary military decisions, this Court is of the opinion that it would inappropriately burden the courts and the military to apply such a test. Cf. United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374–375 (2nd Cir. 1968), cert. denied, 394 U.S. 929, 89 S. Ct. 1195, 22 L.Ed.2d 460 (1969); Nixon v. Secretary of the Navy, 422 F.2d 934, 939 (2nd Cir. 1970); Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

ther's death. Petitioner's latest Record of Emergency Data (NAVPERS Form 1070/602), dated September 1, 1972, indicated that petitioner's brother was living with Mrs. Rickson at her parent's home in Hermosa Beach, California. Although the subsequent letter of January 1, 1973 stated that Warren was temporarily staying with friends, any social or moral problems that might arise from that situation are speculative at best. No attempt was made by petitioner to provide a supporting affidavit from his brother on this subject, pursuant to BUPERSMAN 3850240.4. Nor has petitioner begun to show how his brother's financial needs would be alleviated by his discharge from the Navy. The boatyard job offered by Mr. Stern's letter of January 22, 1973, would concededly yield the petitioner less income than his present Navy salary of $445.30 per month. The expressed hope that petitioner might find additional part-time employment if discharged is more than offset by the certitude that his wife's imminent confinement and childbirth would give rise to considerable additional medical expenses that would not befall him as a member of the naval service. *See* 10 U.S.C. § 1071 et seq.

The above considerations apply as well to petitioner's general complaint that he is presently indebted. The regulations in question require that petitioner demonstrate that his discharge "will result in the elimination of or will materially alleviate the [hardship] condition." BUPERSMAN 3850240.3c. But the facts before the CNP proved instead that the petitioner's discharge would simply compound his present financial difficulties.

In summary, the Court is of the opinion that the Navy was not obliged to do more under the circumstances than to inform the petitioner that his case failed to meet the required standards for separation due to hardship/dependency. His application for discharge was defective on its face under the published regulations and did not really merit the sympathetic consideration it apparently received. It did not rise to the status of a *prima facie* case for discharge and the CNP's discretionary determination to deny it was therefore not arbitrary and capricious for want of detailed findings of fact.

Furthermore, it becomes apparent from the above discussion that the CNP's reasons for denial of petitioner's request for discharge "can be ascertained from the administrative record 'with reasonable certainty.' " United States v. Guaraldi, 468 F.2d 775, 777 (9th Cir. 1972). Thus, even if it is assumed that petitioner's application constituted a *prima facie* case of hardship under the regulation, the absence of specific factual findings would not necessarily be fatal, if those reasons amount to a sufficient basis in fact. United States v. Guaraldi, *supra*; United States v. Kember, 437 F.2d 534 (9th Cir. 1970); United States v. Cate, 477 F.2d 536, (9th Cir. 1973). The Court finds that they do.

### III

### CONCLUSIONS OF LAW

In view of the foregoing findings of fact and discussion, the Court makes the following conclusions of law:

1. The Court has very limited jurisdiction to review the discretionary rulings of the military departments. Dellaverson v. Laird, *supra*; Feliciano v. Laird, *supra*; Townley v. Resor, *supra*; Roth v. Laird, 446 F.2d 855 (2nd Cir. 1971).

2. The Navy Department scrupulously adhered to its own regulations in processing the petitioner's request for hardship discharge.

3. The petitioner utterly failed to establish a *prima facie* case for hardship discharge under the pertinent Navy regulations despite the Court's allowance of additional time within which to perfect his application thereunder.

4. Additionally, a sufficient basis in fact for denial of petitioner's application for hardship discharge can be

determined with reasonable certainty from a review of the administrative records relative to said application. United States v. Guaraldi, *supra*; United States v. Cate, *supra*.

5. The respondent's decision denying petitioner's request for hardship discharge was neither arbitrary nor capricious under the circumstances presented in this case.

6. For the above stated reasons, the petitioner's application for writ of habeas corpus should be dismissed with prejudice. Separate judgment to that effect shall be filed.

It is so ordered.