Ronnie Javier **BANDOY**

v.

**COMMANDANT OF the FOURTH NAVAL DISTRICT and The Secretary of the Navy.**

Civ. A. No. 79–4261.

United States District Court, E. D. Pennsylvania.

June 20, 1980.

Jon Llewellyn Landau, Central Committee for Conscientious Objectors, Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Dawn MacPhee, Asst. U. S. Atty., Philadelphia, Pa., R. Lawrence Dessem, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

SHAPIRO, District Judge.

### I. INTRODUCTION

Plaintiff is a member of the United States Navy who seeks a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2241(a), (c)(1) and (c)(2), releasing him from military service on the ground that a request for a hardship discharge was unlawfully denied. Specifically, plaintiff contends that the Navy's [1] denial of his request for a hardship discharge was unlawful and arbitrary because there was no basis in fact for such denial, and it was in violation of the due process clause of the Fifth Amendment having been denied without the promulgation of reasons. Now before the Court are the parties' cross motions for summary judgment. The motions for summary judgment will be denied and plaintiff's application for a hardship discharge remanded to the Navy for further proceedings.

---

1. Although the Department of the Navy is not a party to this action, the respondents are referred to collectively herein as the "Navy."

## II. DISCUSSION OF FACTS

A motion for summary judgment may be properly granted only upon a clear showing that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law. *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978); *Erie County Geriatric Center v. Local No. 2666, American Federation of State, County and Municipal Employees,* 464 F.Supp. 561, 563 (W.D.Pa.1978). On the basis of the uncontroverted pleadings and affidavits, the record may be briefly summarized as follows:

Petitioner Ronnie Javier Bandoy voluntarily enlisted in the United States Navy on March 27, 1970, and reenlisted on March 22, 1974, for a four-year term; ten months later he married Teresita Garcia Bandoy. Petitioner was subsequently convicted on two separate occasions of absence without leave; the first absence took place from April 5, 1976 to November 30, 1976 and a second absence occurred from February 18, 1977 to June 10, 1977. Bandoy's second conviction resulted in a four-month jail sentence at the Philadelphia Naval Base. Petitioner explained to the second court-martial panel that his actions were precipitated by his wife's negative reaction to their long separations. He maintained that his wife was suffering severe physical and emotional distress which necessitated his presence. The court-martial panel recommended that petitioner be given an administrative discharge after serving his jail sentence. However, upon his release from confinement on October 31, 1977, Bandoy was assigned to active duty in Spain.

Bandoy requested, and was granted, leave to file a hardship discharge request prior to reporting to Spain. On November 23, 1977, petitioner filed such request with the Philadelphia Naval Support Activity Command pursuant to Article 3850240 of the Bureau of Naval Personnel Manual (April, 1977) (BUPERSMAN).[2] The papers in support of petitioner's request included a letter from petitioner, his wife, her sister, her attending physician, and a psychiatrist to establish Teresita Garcia Bandoy's severe emotional depression, peptic ulcer, and suicidal tendencies allegedly caused by Bandoy's prolonged absences while on duty.

The request for hardship discharge was endorsed by the Commanding Officer of the Philadelphia Naval Support Activity Command and forwarded to the Chief of Naval Personnel with the recommendation that the request be approved. On December 13, 1977, petitioner received the following message:

A. SNM'S HARDSHIP DISCH REQ OF 23 NOV 77 W/FWD END

B. BUPERSMAN 3850240

1. REGRET REF A DISAPPROVED. REQ DID NOT MEET REQUIRED STANDARDS FOR SEP OUTLINED IN REF B.

2. IF HARDSHIP BECOMES SIGNIFICANTLY WORSE, SNM MAY SUBMIT ANOTHER REQ FOR SEP AT THAT TIME. ANY SUCH REQ MUST BE COMPLETELY DOCUMENTED AS SPECIFIED IN REF B.

After this notification, petitioner failed to report to his assignment in Spain and was declared absent without leave by the Navy. Bandoy voluntarily returned to the Philadelphia Naval Base on November 25, 1979, and brought the instant action.

## III. APPLICATION OF LAW

Petitioner contends that:

1) the Navy's denial was arbitrary and capricious in that there was no basis in fact for such denial; and

---

**2.** See Appendix 1. BUPERSMAN 3850240 (Discharge or Release to Inactive Duty for Reason of Dependency or Hardship) was issued pursuant to 10 U.S.C. § 1173 (1976) authorizing the discharge for hardship of a regular enlisted member of an armed force under regulations prescribed by the Secretary; the Naval regulations were in force in 1977 and now appear at 32 C.F.R. § 730.8 (Administrative Discharge and Related Matters Concerning Separations from the Naval Service). The parties do not dispute the BUPERSMAN criteria for eligibility or procedural requirements thereunder.

2) the Navy's denial was in violation of the due process clause of the Fifth Amendment to the United States Constitution because petitioner's request presented *prima facie* qualification for hardship discharge which was denied without reasons. Because there is no record of the actual grounds for denying petitioner's request, we reach only Count Two of plaintiff's Complaint and remand for reconsideration and a statement of reasons for the resultant redetermination.

 Federal district courts have jurisdiction to review administrative hardship discharge claims for violation of an individual's due process rights. *Harris v. Middendorf*, 4 MLR 2456 (S.D.Ca.1976), *reconsidered* 4 MLR 2608 (S.D.Ca.1976); *Rickson v. Ward*, 359 F.Supp. 328 (S.D.Ca.1973); *Townley v. Resor*, 323 F.Supp. 567 (N.D.Ca. 1970); *Jenkins v. Commandant, First Naval District*, 303 F.Supp. 1150 (D.Ma.1969). *See, Santos v. Franklin*, 493 F.Supp. 847, (E.D.Pa.1980); *Hickey v. Commandant of the Fourth Naval District*, 461 F.Supp. 1085 (E.D.Pa.1978). In *Rickson v. Ward, supra*, a seaman requested a hardship discharge pursuant to BUPERSMAN 3850240 and subsequently sought *habeas corpus* relief on the ground that the Navy's denial of the request was unlawful. The court, recognizing that the scope of review of discretionary military decisions is extremely narrow, stated that once a petitioner has established a *prima facie* case for hardship discharge, the military must provide a detailed factual explanation for its denial of such application. This "reasons requirement" is necessary to preserve a seaman's due process right to subsequent judicial review of the Navy's decision; otherwise meaningful review would be an impossibility. However, where the petitioner failed to establish a *prima facie* hardship claim, as the court held in *Rickson*, the military will not be required to provide reasons for the denial.

The requirement that reasons must be provided by the military when denying a *prima facie* request for hardship discharge in order to preserve petitioner's due process right to subsequent meaningful judicial review is supported by *Townley v. Resor, supra*. The petitioner, a member of the United States Army, filed a request for hardship discharge on the ground that he was the sole support of his elderly grandmother and was required to care for her in person. *Id.* at 568. The Army, denying the request, stated only that it did not satisfy Army regulations. *Id.* The court recognized that discretionary military decisions may only be reviewed for arbitrariness or capriciousness. But before such review on the merits can be obtained, there must be a record to provide a basis for review:

> Implicit in this [right of district courts to review military decisions] is the understanding that the court must have something to review. Once petitioner has stated a prima facie case for a discharge, the Army must explain, in factual terms, why it is denying the application. (Citations omitted) Without such reasons, it is impossible to determine whether or not the decision was arbitrary and capricious, and judicial review becomes meaningless.

*Id.* at 569. The court concluded that petitioner had established a *prima facie* case and therefore the Army had an obligation to provide reasons for its denial, for "[w]ithout these reasons, meaningful judicial review is a nullity and a measure of due process is similarly removed from the system." *Id.* Cf., *Jenkins v. Commandant, First Naval District, supra*, (where petitioner established a strong case for hardship discharge and no reasons were provided for denial, the Marine Corps' decision was not supported by substantial evidence and was thus without basis in fact).

Therefore, the threshold issue is whether petitioner has established a *prima facie* case for discharge. In order to establish such a case, BUPERSMAN 3850240 (1977) requires that petitioner show:

1) A servere [sic] hardship, not normally encountered and resolved by other members of the naval service, exists.

2) The hardship affects the service member's immediate family. . . .

3) The hardship is not of a temporary nature. . . .

4) The hardship has occured [sic] or has been severely aggravated since entry into the service.

5) The member and family have made every reasonable effort to alleviate the hardship.

6) There are no other family members or relatives nearby who are capable of providing the necessary assistance.

7) The discharge or release of the member will result in the elimination of or material alleviation of the hardship.

■ Bandoy's averments in his request for hardship discharge regarding his wife's physical and emotional state meet this standard. Bandoy's averments go beyond those in *Rickson, supra,* where the court found that petitioner failed to establish a *prima facie* case. There, petitioner's wife was pregnant and it was asserted that she needed his moral support; petitioner's brother was financially dependent upon him, and petitioner was severely in debt. *Id.* at 333. The applicable regulations specifically stated that pregnancy of an enlisted wife was not in and of itself a circumstance warranting discharge. *Id.* at 332. Also, petitioner failed to show how discharge would have alleviated his financial problems (at his proposed civilian job, petitioner would have earned *less* than his Navy salary). *Id.* at 334.

■ In the instant case, the hardship affected petitioner's immediate family, appeared severe, was not temporary, and occurred since petitioner's entry into service. Plaintiff established that Mrs. Bandoy suffered from a peptic ulcer and severe depression and was suicidal; on more than one occasion she called her husband and threatened suicide if he did not come home to

assist her. Respondent questions whether members of the family have made sufficient effort to alleviate the hardship. However, the affidavit of Dr. Edward Teitleman, psychiatrist, supported the assertion of petitioner that only his physical presence free from the threat of sudden transfer to distant posts could have alleviated Mrs. Bandoy's condition or its severity.[3] Petitioner's *prima facie* case was supported by the recommendation of petitioner's Commanding Officer that the hardship application be approved. *Cf., Santos v. Franklin, supra* at 857. There having been a *prima facie* case for discharge under the regulations effective in 1977, the absence of any statement of reasons for denial violated Bandoy's due process rights. *E. g., Townley v. Resor, supra.*

■ The question of relief remains. Petitioner argues for outright discharge; the Navy contends that the case should be remanded for further proceedings. The court agrees that remand is appropriate because it cannot be determined on this record whether or not the denial of the hardship application was arbitrary and capricious. Mere conclusory statements of reasons provide insufficient grounds for review.

On remand the Navy may not consider adversely to petitioner the period that he was AWOL subsequent to the procedurally improper denial on December 13, 1977.[4] Petitioner should be allowed to file any additional information he deems probative of the merits of the original application of November 23, 1977. *Townley v. Resor, supra* at 569. The court will retain jurisdiction should further proceedings on the hardship application not be concluded within a reasonable time. *Id. See, Harris v. Middendorf, supra* (*habeas* action continued to afford Navy opportunity to submit reasoned disposition of hardship application).

---

**3.** The guidelines furnished to members of the discharge review board (Affidavit of Cap'n. J. E. Potosnak, Appendix B) go further and require medical documentation that ongoing treatment has not been successful; Appendix B, at 2. Petitioner has made out a *prima facie* case in this regard too; Petitioner's Service Record, at 60–61 (letter of Mark L. Chapman, M.D.).

**4.** Ordinarily, a discharge or release to inactive duty will not be authorized "except under extraordinary circumstances" when "the member is under charges, [or] confined. . . ." BUPERSMAN 3850240, § 2(b) (1977). Petitioner was not under charges or confined at the time of the improper hardship denial.

APPENDIX

BUREAU OF NAVAL PERSONNEL
MANUAL—

3850240 DISCHARGE OR RELEASE TO INACTIVE DUTY FOR REASON OF DEPENDENCY OR HARDSHIP

1. Since it is realized that some Navy personnel and their families will encounter hardships while serving on active duty, provisions have been made for the early separation of some personnel whom the Chief of Naval Personnel determines have hardships which meet established criteria. The Chief of Naval Personnel or his designee will consider all requests for discharge or release to inactive duty of enlisted personnel for reason of dependency or hardship. (10 U.S.C. 1173). A discharge may be directed to the eligible member who does not have an additional service obligation. The eligible member who has an additional service obligation under any provision of law may be transferred to the Naval Reserve (if otherwise eligible therefor) and released to inactive duty, or, if already a member of the Naval Reserve, released to inactive duty to serve the remainder of the obligated service therein. However, the decision of whether a hardship discharge should be granted is purely a military discretionary decision and no service member has a right to discharge from the Navy.

2. Criteria governing discharge or release to inactive duty for reason of dependency or hardship include the following:

a. The member's request must show that the hardship meets the following criteria for eligibility for discharge or release hereunder:

(1) A servere hardship, not normally encountered and resolved by other members of the naval service, exists.

(2) The hardship affects the service member's immediate family. (Immediate family is defined as: Spouse, son, daughter, stepchild, if such child is in fact dependent upon the member, parent, brother, sister, or other person including a step-parent acting in loco-parentis for a period of five years before the member became 21 years of age, or any bona fide dependent of the service member. In-laws are not considered members of the immediate family solely by virtue of their relationship as in-laws).

(3) The hardship is not of a temporary nature and cannot reasonably be expected to be resolved within the near time frame, i. e., possibly utilizing leave (including emergency leave if overseas) or a period of TEMDU for humanitarian reasons to ameliorate the situation.

(4) The hardship has occured or has been severely aggravated since entry into the service.

(5) The member and family have made every reasonable effort to alleviate the hardship.

(6) There are no other family members or relatives nearby who are capable of providing the necessary assistance.

(7) The discharge or release of the member will result in the elimination of or material alleviation of the hardship.

(b) Except under extraordinary circumstances as determined by the Chief of Naval Personnel or his designee a discharge or release to inactive duty will not be authorized when the member is under charges, confined, or solely:

(1) For financial or business reasons (including the operation of a family business).

(2) For indebtedness.

(3) For personal convenience.

(4) Because of the member's physical or mental health.

(c) A discharge or release to inactive duty will not be disapproved solely:

(1) Because the member is required in assigned duties.

(2) Because the member is indebted to the government or to an individual.

(d) Extraordinary circumstances, involving members of the applicant's family, normally warrant special consideration when it is established that the member's presence is essential to alleviate the hardship and includes, in addition to other requirements, the following (This is not a conclusive list.):

(1) The death of or divorce from a spouse where the member is left as sole parent of a minor child or children, other arrangements cannot be made for their continued care and the member cannot continue at present duties and properly care for them.

(2) The long term physical or mental illness of the spouse which does not allow member to perform duties as assigned and the member's continued presence is required (Note that whether the mental illness of the member's spouse is severe enough to warrant a Hardship Discharge is a determination wholly and solely within the discretion of the Chief of Naval Personnel or his designee).

(3) As a result of the disability or death of a parent, the separation of the member from the Navy is essential for the financial and physical support of a member or members of the family. Undue hardship does not necessarily exist solely because of altered present or anticipated income. Consideration must be given to Social Security, disability payments, other federal and state assistance programs, and any other income and/or assets of the member and/or other family members.

3. Enlisted personnel who desire to request discharge or release to inactive duty, as appropriate, for dependency or hardship reasons shall be informed of the proper procedure to follow. It should be clearly explained to each applicant that a request shall be submitted via official channels, that submission of a request is no assurance that discharge or release to inactive duty will be authorized, and that the decision is within the sole discretion of the Chief of Naval Personnel or his designee, regardless of the recommendations of any other military authority. Each such request received will be carefully and sympathetically considered and a final decision will be based upon its individual merits. It should be further explained to the member prior to submission of a request for hardship discharge, or when a request for hardship discharge is included as an alternative in and to a request for humanitarian shore duty, that such a request for hardship discharge once approved

by the Chief of Naval Personnel or his designee is irrevocable, except in the most unusual circumstances. In instances of this nature it will be necessary for the member to submit a request for cancellation of discharge authority to the Chief of Naval Personnel, via official channels, stating how the hardship has been eliminated and include affidavits attesting to this fact.

4. A written request for discharge or release to inactive duty for dependency or hardship shall be forwarded to the Chief of Naval Personnel (Pers 5223) via the enlisted member's commanding officer. In unusual circumstances, personnel in an authorized leave status may submit requests for dependency or hardship discharge to the Chief of Naval Personnel. To facilitate and expedite the request and to ensure that it is properly prepared in accordance with instructions, it should be prepared by and submitted via the nearest naval activity with an information copy of the basic request and the forwarding endorsement sent to the parent activity. The preparing activity shall immediately inform the member's commanding officer of the request and include a recommendation for a leave extension, if warranted. Otherwise, the provisions as delineated in Chapter 18, ENLTRANSMAN may be utilized if deemed appropriate by the commanding officer. All requests must be accompanied by affidavits substantiating the dependency or hardship claim. Where practicable, one affidavit should be from the dependent concerned. The request should contain the following additional information:

a. Reason in full for request.

b. Complete home address of dependent and applicant.

c. Names and addresses of persons familiar with the situation.

d. Statement as to marital status and date of marriage.

e. Financial statement. The statement should consist of a complete itemized budget for the service member and/or dependent family members including rent, food, clothing, utilities, fuel, medical expenses, and

other regular expenses: list of existing debts including names of creditors, original amount of debt, amount of debt remaining to be paid, amount of monthly payments, date debt contracted and purpose; and specific amounts and modes of contributions of service member to dependents or others during current enlistment.

f. Names, ages, occupations, and monthly incomes, if any, of all of the service member's family and the reasons why each cannot contribute to the necessary care or support of those enduring the hardship.

g. If dependency or hardship is the result of the medical problems of a member of the enlisted member's family, a current (within two months) statement is required from the attending physician. Medical terminology within the statement should be defined to a degree sufficient to allow a layman to understand the nature of the illness. The statement must include both the diagnosis and prognosis. If applicable the life expectancy of the family member concerned should also be included. If mental illness is involved, the physician's statement should also include as much pertinent background information as possible concerning the patient's mental health. Evaluation will include consideration of the following:

(1) Current morbidity and mortality trends for the disease or medical condition.

(2) Prognosis for recovery from the disease or solution of the medical condition.

(3) Expected result of discharge on the medical problem and whether the problem can be resolved without discharge.

(4) Treatment afforded the patient to date of evaluation and results of that treatment.

h. Other income and assets of dependent family members such as pensions, insurance, Veterans' Administration compensation, ownership, rental or sale of real estate, investments, bank deposits and income thereon, fees, alimony, or moneys in their possession, anticipated, and/or received of any description whatsoever, whether regular or occasional, or Social Security benefits or trust funds.

i. Documentary evidence if the request is based solely on marital difficulties: i. e., divorce, separation, desertion of spouse or where the member or persons other than the legal spouse have been awarded custody of minor children.

Prior to the submission of a request for separation/discharge for dependency or hardship, the service member shall be advised of the Privacy Act statement relative to this information as follows: "The authority to request this information is derived from 5 U.S.C. 301 Departmental Regulations. The purpose of the request is to request release from naval service due to dependency or hardship reasons. The information is used to determine approval or disapproval for the requested status. This application is completely voluntary; however, failure to provide the required information will result in an inability to process the request and member would not be able to receive the requested status."

5. Before forwarding the request, the commanding officer shall interview the enlisted member concerned in order to elicit any further information and to ensure that the required information is supplied. The forwarding endorsement shall include:

a. A definite recommendation for approval or disapproval of the request, and the reasons supporting the recommendation. These reasons should include the opinion of the commanding officer as to sincerity or insincerity of the member's reason for seeking a hardship discharge.

b. A statement regarding the status of any disciplinary action pending with recommended action.

c. An itemization of all sources of income including the type of family separation allowance, if any, as determined from member's pay record, and all assets.

d. An itemization of pay record deductions including allotments, the amount, to whom registered, and effective date.

e. Additionally, a current copy of emergency data record and copy of History of Duty Assignments shall be forwarded as enclosures.

6. The commanding officer's recommendation on a member's request or hardship discharge should be confined to the above areas. In no case should this endorsement include a recommendation for a substitute type of discharge; i. e., general, etc. A hardship discharge is intended to be used as an instrument to alleviate personal hardship encountered by enlisted members when such discharge is the only solution. It is not intended to be used as a means to rid the service of undesirables, misfits, or members considered unsuitable for continuation in the naval service. The Chief of Naval Personnel shall be notified by message of any change in the status of a member after a request for hardship discharge has been submitted. This notification applies to such matters as departure on leave, transfer to hospital, unauthorized absence, or temporary additional duty.

7. Any information concerning the private affairs of members of the naval service or of their families is intended "For official use only" and shall not be disclosed to persons other than in connection with their official duties, nor shall the source of such information be disclosed.

8. If deemed appropriate, commanding officers may request information and reports from the American Red Cross or other social service or welfare agencies relative to an enlisted member's home conditions when a member submits or desires to submit a request for separation for dependency. If a report which may have a bearing on the case is received by the commanding officer from the Red Cross or other agency, it should be forwarded to the Chief of Naval Personnel for consideration.

9. Procedures for effecting separation by reason of dependency or hardship of members who have a Military Selective Service (MSS) obligation remaining are:

a. For Regular Navy personnel, enlisted or inducted, when transfer to the Naval Reserve and release to inactive duty are directed by the Chief of Naval Personnel or his designee, the prescribed procedures shall be followed with the exception that such members shall be assigned to the Standby Reserve-Active (USNR–S1) in lieu of the Ready Reserve.

b. For members of the Naval Reserve serving on active duty, when release to inactive duty is authorized, the following action will be taken:

(1) Complete appropriate parts of Page 14, Record of Discharge, Release from Active Duty, or Death, of the service record and make entry under the "Remarks" column to indicate date of release to inactive duty and obligated service as follows:

"Released for reasons of hardship/dependency to inactive duty in the U.S. Naval Reserve to complete the service obligation acquired under the Military Selective Service Act. Upon completion of traveltime to be placed in Standby Reserve-Active (USNR–S1). Obligated to serve in the Naval Reserve until (fill-in) unless sooner discharged."

(2) Issue an Armed Forces of the United States Report of Transfer or Discharge, DD Form 214N, Page 15 of the service record. Forward service and health records to the Commanding Officer, Naval Reserve Personnel Center. A new service record will not be opened. Distribute copies of Page 14 and DD Form 214N in accordance with instructions.

(3) Issue orders covering release to inactive duty. Appropriate distribution of copies shall be made.

(4) Immediately upon receipt of the service record, the Commanding Officer, Naval Reserve Personnel Center shall place an entry on the Administrative Remarks, Page 13, showing transfer of the member from the Ready Reserve to the Standby Reserve-Active (USNR–S1).

10. In effecting the separation of a member by reason of dependency or hardship, the character of separation shall be determined solely by the member's military record.