**Mark P. YOCUM**

v.

**UNITED STATES of America, Department of the Navy and John Lehman, Secretary of the Navy.**

**Civ. A. CA–81–4014.**

United States District Court,
E.D. Pennsylvania.

July 6, 1984.

Donna E. Baker, Philadelphia, Pa., for plaintiff.

Rachel Shao, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

FINDINGS OF FACT and
CONCLUSIONS OF LAW

SHAPIRO, District Judge.

## INTRODUCTION

Mark Yocum, a Naval reservist involuntarily activated, brought this action against the Government following his term of service to recover as damages wages he would have earned as a civilian had he not been forced to return to active duty. Jurisdiction is asserted under the Tucker Act, 28 U.S.C. § 1346(a)(2). Plaintiff asserts a Government breach of his Navy enlistment contract.

Plaintiff's original complaint, filed in October, 1981, contained three Counts. Counts I and II, seeking compensatory and punitive damages for alleged violations of Navy regulations and the Fifth Amendment, were dismissed for lack of subject matter jurisdiction. No waiver from the doctrine of sovereign immunity was found to apply. The suit filed against the Secretary of the Navy in his official capacity was also barred because it was really an action against the sovereign. Count III, brought under 42 U.S.C. § 1983, was dismissed for failure to state a claim because that statute applies to persons acting under the color of state rather than federal law. Plaintiff's motion for summary judgment was denied. However, plaintiff was given leave to file an amended complaint if a good faith claim for breach of contract could be stated under the Tucker Act. Plaintiff subsequently did file an amended complaint that reduced the amount claimed in damages to less than $10,000. Defendants' motion to dismiss the amended complaint was denied because the amended complaint asserted that there was a contract between plaintiff and defendants that had been breached by defendants. Defendants subsequently filed a motion for summary judgment; after hearing oral argument, the court denied that motion in order to allow plaintiff full opportunity to present the alleged contract and breach at trial. Following a bench trial on May 23, 1984, the court finds in favor of defendants.

## FINDINGS OF FACT

1. On December 19, 1975, plaintiff enlisted in the United States Naval Reserve for a period of six (6) years.

2. At that time, he executed a document entitled "Enlistment or Reenlistment Agreement—Armed Forces of the United States" (the "Agreement").

3. Section III, Paragraph 11 of the Agreement provides: "I will receive the pay and allowances and other benefits as provided by law and regulation."

4. Section III, Paragraph 12 of the Agreement further provides: "With regard to any other benefits, I understand that only those promises, if any, recorded herein or Annex(es) A, B, C attached hereto will be honored and that any other promises not contained therein made by any person are not effective and will not be honored." [Annexes A, B, C are not relevant here.]

5. Plaintiff agreed to serve a minimum of four (4) months on active duty.

6. Plaintiff agreed to serve the balance of enlistment term in the Ready Reserve.

7. Under Ready Reserve status, plaintiff was obligated to attend a minimum of forty-eight (48) drills per year and serve on active duty for training at least fourteen (14) days per year; or serve on active duty for no more than thirty (30) days per year.

8. Section IV, Paragraph 14(b)(3) of the Agreement provides: "As a member of the Ready Reserve, if I am not assigned to, or participating satisfactorily in, a unit of the Ready Reserve, have not fulfilled my statutory reserve obligation; and have not served on active duty for a total of 24 months; I may be ordered to active duty without my consent until my total service on active duty equals 24 months. If my enlistment or other period of military service expires before I have served the required period, it may be extended until I have completed the required active service[.]"

9. Plaintiff certified that he read and understood the Agreement.

10. Plaintiff served on active duty from January to July, 1976.

11. On July 11, 1976, plaintiff executed a statement of understanding (the "Statement") at his reserve unit in McKeesport, Pennsylvania.

12. The Statement acknowledged that unexcused absences of scheduled drills could not be made up and subjected the reservist to involuntary activation.

13. By March, 1978, plaintiff's level of participation in the mandatory drills was unsatisfactory.

14. Plaintiff was told this by his direct superior, R.W. McLellon, Officer-in-Charge, who recommended his placement on probationary drilling status.

15. This recommendation was approved by J.W. Pfleger, Commander, Naval Reserve Readiness Command, Region Five.

16. By June, 1978, plaintiff's participation was again unsatisfactory.

17. This time McLellon nominated plaintiff to active duty.

18. This nomination was endorsed by Commanding Officer J.R. Durmick.

19. In September, 1978, upon learning of plaintiff's participation in a drug and alcohol rehabilitation program, Pfleger refused to activate plaintiff for duty but ordered continuation of his probationary status instead.

20. Plaintiff's attendance record remained unsatisfactory.

21. On March 4, 1979, McLellon again nominated plaintiff to active duty.

22. McLellon's nomination letter was forwarded, the same day, to Pfleger by Commanding Officer R.E. Rogers, who recommended its approval.

23. Copies of the nomination letter and the endorsement were sent to plaintiff by certified mail to the address the McKeesport Reserve Center had on file for plaintiff: RD I, Knoxville Road, Stuebenville, Ohio 43952. A signed receipt acknowledged delivery of the nomination letter, the endorsement and the enclosures.

24. The address the McKeesport Reserve Center had on file for plaintiff was then the address of plaintiff's parents.

25. Plaintiff's parents had forwarded mail addressed to plaintiff prior to the certified nomination letter.

26. Plaintiff either received McLellon's nomination letter or did not receive it because he did not request his parents forward it.

27. Included in the nomination letter were copies of the notice of his first unexcused drill and the notice of his sixth unexcused drill with a warning that he was being nominated for active duty and that he could include a statement explaining unsatisfactory performance in the nomination letter.

28. Pfleger concurred in McLellon's nomination; therefore, by letter prepared April 2, 1979, plaintiff was ordered to report on May 14, 1979 for active duty for a period of seventeen (17) months.

29. There is no proof that Pfleger's order was mailed to plaintiff.

30. From Fall of 1976 to Spring of 1978, plaintiff was living in Wintersville, Ohio.

31. From Spring of 1978 to Fall of 1978, plaintiff was living in Richmond, Ohio, at which time he moved to Toronto, Ohio.

32. Plaintiff informed the Naval Finance Center in Cleveland, Ohio of his changes of address; monthly payment checks were delivered to him at each of these addresses: Apt. L, 133 Reichart Avenue, Wintersville, Ohio 43952; RD I Box 119, Richmond, Ohio 43944; and 803 Fernwood Drive, Toronto, Ohio 43944.

33. Plaintiff had an obligation to keep the Navy informed of his address by filing a blue change of address card with the Custodian of Service Records at the McKeesport Reserve Center.

34. Plaintiff did not file a blue card recording any of his three changes of address in violation of this obligation.

35. Plaintiff's informing the Naval Finance Center of his changes of address was not notice to the McKeesport Reserve Center.

36. The orders reactivating plaintiff were hand delivered to him personally on April 14, 1979 by McLellon and Rogers when he was with his reserve unit for a weekend drill.

37. Plaintiff obeyed the activation orders, and served in the Navy from May 14, 1979 until his release in October, 1980.

## DISCUSSION

■ Sovereign immunity extends to actions against agencies of the United States such as the Department of the Navy. *See,* 14 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3655 (1976). Sovereign immunity bars this suit unless plaintiff can establish that the Congressional waiver provided by the Tucker Act, 28 U.S.C. § 1346(a) is applicable. *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *United States v. Mitchell,* 463 U.S. 206, —, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580, 588 (1983).

■ The Tucker Act gives federal district courts original jurisdiction over civil actions against the United States not exceeding $10,000 in amount "founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). The burden is upon the plaintiff to show that there was such a contract and that it was breached by the federal Government. Plaintiff failed to establish an express or implied contract with the United States, and even if the Agreement were such a contract, it was not breached.

■ Plaintiff asserts that under the "other benefits as provided by law and regulation" clause of the Agreement (*see* Finding No. 3 *supra*) the Navy was contractually bound to follow regulation BUPERSINST 5400.42E CH–2 set forth in Administrative Procedures for Naval Reservists on Inactive Duty.[*]

The United States Supreme Court has held that Government agency regulations do not constitute terms of an implied contract. *Army and Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). In *Sheehan, supra,* the Court said "jurisdiction over respondent's [plaintiff's] complaint cannot be premised on the asserted violation of regulations that do not specifically authorize awards of money damages." *Id.* at 739, 102 S.Ct. at 2125. Plaintiff alleges that BUPERSINST 5400.42E CH–2 is part of an implied-in-fact contract with the Navy. *Sheehan* makes clear that is not the law.

Plaintiff cites *Mitchell, supra,* to the contrary and gives the decision a broader scope than is justified. The Supreme Court there held that the Tucker Act granted jurisdiction where statutes and regulations clearly established fiduciary obligations of the Government in the management and operation of Indian lands and resources that could fairly be interpreted as mandating compensation for damages sustained. Under those statutes and regulations the availability of remedies for the Government's breach of fiduciary duties as trustee was held actionable. Here there is no comparable allegation of breach of trust, *Cf., United States v. Mitchell,* 445 U.S. 535, 542, 100 S.Ct. 1349, 1353, 63 L.Ed.2d 607 (1980).

The Naval Regulations cannot fairly be interpreted as mandating compensation for damages sustained by a reservist for having been recalled to active duty. The regulation itself provided for administrative review at the time, *see* BUPERSINST 5400.-42E CH–2, 305.1; the Secretary of the Navy was subject to federal court action to enjoin reactivation prior thereto. *See Dougherty v. Lehman,* 688 F.2d 158 (3d Cir.1982). During a term of illegal active duty, plaintiff's release might have been obtained by writ of *habeas corpus. Cf. West v. Chafee,* 560 F.2d 942 (8th Cir.1977); *Bandoy v. Commandant of Forth District,* 495 F.Supp. 1092 (E.D.Pa.1980). But

---

[*] *See* Appendix A attached hereto for pertinent portions of BUPERSINST 5400.42E CH–2.

the regulations deal with appropriate procedures for notice and some kind of hearing prior to activation. Nothing expressly or implicitly contemplates any monetary consideration whatsoever.

■ Even if plaintiff had successfully established the Naval Regulations as an implied term of plaintiff's enlistment contract with the Navy, there was no breach of it. Plaintiff does not dispute his unsatisfactory attendance record at the mandatory drills. When nominated for active duty, his orders were sent to the address plaintiff provided to the McKeesport Reserve Center. The original receipts of delivery of all the certified letters were destroyed by defendant so that only illegible copies were available at trial. However, plaintiff had the burden of proving that the Navy did not send him notice or sent notice to an incorrect address. Plaintiff failed to show either.

Plaintiff's testimony that he filed change of address cards at the McKeesport Reserve Center was not credible; the testimony of the two Government witnesses was. Plaintiff kept the Naval Finance Center which issued his paycheck advised of his multiple address changes; he did not do the same for the McKeesport Reserve Center. The Navy complied with BUPERSINST 5400.42E CH–2 by sending his nomination letter to the reservist's "most recent mailing address." So even if that regulation were part of an implied-in-fact contract between plaintiff and the defendant, there was no breach.

■ Plaintiff's claims that the Navy's improper notification deprived him of the right to appeal his reactivation. This argument cannot prevail. Plaintiff received personal notice by hand delivery at a drilling session at least one month prior to his reporting date. At no time during that month did he institute legal proceedings challenging the reactivation order. Plaintiff has failed to show he is entitled to recover damages.

Facts stated in this discussion supplement the Findings of Fact made herein.

## CONCLUSIONS OF LAW

1. The Tucker Act, 28 U.S.C. § 1346(a)(2) provides a waiver of the traditional doctrine of sovereign immunity in civil suits founded upon any express or implied contract with the United States.

2. Plaintiff has failed to prove a contract between the United States and the plaintiff that contemplates an award of damages for its breach.

3. Even if there were a contract such as plaintiff asserts, its terms were not breached by the defendant. The notification procedure set forth in BUPERSINST 5400.42E CH–2, alleged to be part of the contract, was substantially followed by defendant.

4. Plaintiff was not deprived of his right to make a statement of explanation or opposition to his involuntary order to active duty.

5. Judgment will be entered for defendant.

## APPENDIX A

BUPERSINST 5400.42E CH–2

21 JUL 1980

Naval Sea Cadet Corps

Sea Power Presentations

Cross Service Training in accordance with BUPERSMAN 6610200.

305. *Measures to be Taken for Unsatisfactory Participation.* Mandatory obligors (Ready Mariners/Active Mariners) are ordered to extended active duty/additional ACDUTRA for failure to maintain satisfactory participation. These actions are authorized by law (10 USC 673a and 10 USC 270) and are administrative in nature. They are taken to satisfy military training obligations and to correct deficiencies arising from unsatisfactory performance. Administrative procedures for the nomination of personnel to Extended Active Duty/Additional Active Duty for Training, outlined in this section must be strictly adhered to. The nomination to involuntary active duty or active duty for training is, establishment of a legal case presented on behalf of the

Navy to justify the recall of the member in accordance with directives and federal statute and must be approached as such. Nominations are subjected, on numerous occasions, to legal scrutiny, especially if the member is subsequently declared a deserter for failure to comply with orders. Accordingly, careful attention to detail must be taken in the preparation and submission of nominations to ensure full compliance with both regulation and statute. The requirements and documents indicated in this section with respect to nomination procedures for Additional Active Duty for Training/Extended Active Duty are the minimum requirements. Additional documentation such as Page 13 entries documenting personal contact or attempted contact with unsatisfactory participants as well as other germaine documentation should also be submitted. As a general rule, it is considered better to submit too much information in connection with nominations of this nature than not enough.

1. *Nomination for Additional ACDU-TRA/extended ACDU.* The administrative procedures set forth in this section constitute official regulations regarding nominations for additional ACDUTRA/extended ACDU of mandatory drill personnel. Failure to comply with these requirements is sufficient grounds for disapproval of a nomination. Chief of Naval Reserve/Readiness Commanders are charged with the responsibility of reviewing, approving, and authorizing issuance of orders to additional ACDUTRA/extended ACDU for all unsatisfactory obligor personnel. When disapproving a nomination, the Chief of Naval Reserve/Readiness Commander shall provide the unit commanding officer with specific guidance regarding the continued participation of the unsatisfactory performer. It is not recommended that extended periods of probationary participation be required, as authorizing numerous make-up drills creates an unnecessary administrative burden. Accordingly, in such cases, the member shall be informed that the previous period of unsatisfactory participation which resulted in his/her nomination will be disregarded and that his/her future par-

ticipation will be strictly administered in accordance with this directive. Absences must not exceed 10% of the number of regular drills prescribed for the training/pay category assigned in order to maintain satisfactory performance. Upon determination of the sixth (third for Category B) unexcused absence in a progressive 12-month period, or unexcused failure to report for scheduled ACDUTRA, unit commanding officers shall nominate mandatory drillers for additional ACDU-TRA/extended ACDU to the Readiness Commander/Chief of Naval Reserve via the appropriate chain of command, with the exception of commanding officers of NRF ships who should submit nomination letters to the appropriate Readiness Commander. To ensure timely submission, the nomination letter will be mailed within 15 days following the determination of the sixth (third for Category B) unexcused drill or the end of the month in which the member failed to report for scheduled ACDUTRA. This 15-day limitation allows for 10 days for the member to submit a statement concerning unsatisfactory status plus five days in which to process and mail the nomination letter. A copy of the nomination letter will be provided to the member. The nomination letter shall include, but not be limited to the following:

a. Investigative type report, complete with supporting statements and documents. In cases where the member has submitted a statement on his/her own behalf concerning his/her unsatisfactory performance, commanding officers shall comment on the validity of the statement or make other appropriate comments in connection therewith.

b. Statement of the member or a declination by the member to submit a statement concerning his/her unsatisfactory participation.

c. Number and relationship of dependents.

d. Dates of active duty and all active duty for training performed since enlistment (Ready Mariner personnel only).

e. Expiration of the member's enlistment.

f. Certified copy of CNAVRES 1570/5a sent to the member on the occasion of the first unexcused absence with copy of certified mail receipt.

g. Certified copy of the Drill Muster Record (NAVPERS 1570/12) covering last progressive 12 month period.

h. Certified copy of CNAVRES 1570/5A sent to the member on the occasion of the sixth unexcused absence (third for CAT B personnel) with a copy of the certified mail receipt.

i. Certified copy of CNAVRES 1570/2 signed by the member and Page 13 entry outlining participation requirements signed by member and witnessed.

j. Copy of notification to the member of the scheduling of annual ACDUTRA by the unit commanding officer (See Section III, Chapter 9, para 901.2f.) (If application is based solely on unexcused failure to perform annual ACDUTRA.)

k. Certified copy of written notification informing member of unsatisfactory participation with intent to nominate for extended ACDU/additional ACDUTRA and right to statement. (If application is based solely on unexcused failure to perform annual ACDUTRA.)

l. Statement by commanding officer that due consideration was given to family responsibilities and employment (necessary to maintain the national health, safety, or interest). (For nominations to extended active duty only 10 USC 673a refers). The mere assertion that the member's family and employment situation were considered or the statement that family and employment situation of the Reservist cannot be determined is insufficient. Unit commanding officers must actually investigate the family and employment situation of the Reservist and so state in the nomination letter, such as "the subject named member is married with two children, ages two and three, and is employed by Acme Motors."

. . . . .

4. *Administrative Procedures.* Historically, members who desire to submit an explanation of their unsatisfactory performance have utilized congressional/legal assistance to air their grievances. It is recognized that no monitoring system will completely eliminate all such cases, nor should any member's right to communicate with his/her elected representative or to seek legal counsel be abridged in any way. However, experience has shown that, in most instances, a failure in communication or in the member clearly understanding his/her obligation is the root cause of his seeking assistance outside the Navy. The following method is expected to alleviate this problem and therefore shall be adhered to:

a. All members being nominated for extended active duty/additional ACDUTRA will be sent official written notification by certified mail advising them that their performance is unsatisfactory and that they are being nominated for orders to active duty/ACDUTRA, as outlined in subparagraph 305.1.

b. When members of the Selected Reserve are ordered to active duty for training, copies of their orders shall be furnished to the individuals through personal contact by a member of the command and a written acknowledgement of receipt obtained. When such efforts are unsuccessful, or not practicable, the orders shall be mailed to the individual.

(1) Orders mailed to such members shall be sent by Certified Mail (Return Receipt Requested), and a Receipt of Certified Mail (PS Form 3800) obtained. In addition, the individual who mails the orders shall prepare a Sworn Affidavit of Service by Mail (Format on page I–3–B–1) that shall be inserted, together with the PS Form 3800, in the member's personnel file.

(2) Notification shall be made through the mailing of orders to the member's most recent mailing address.

c. Mandatory obligors shall be nominated for orders to extended active duty/additional ACDUTRA by the command as indicated in paragraph 305.1.

d. Ready Mariner (4 × 10) members and first-term interservice transferees having a similar obligation who fail to meet participation requirements will be ordered to active duty for a period of time not to exceed 24 months when combined with previous active duty and active duty for training. If the enlistment of a member who is ordered to active duty would expire before the period of active duty has been served, his/her enlistment may be extended until the period of active duty has been completed in accordance with the provisions of 10 USC 673(a). The normal minimum authorized period of active duty for unsatisfactory participation is 12 months. Orders to active duty for less than 12 months must first be approved by the Chief of Naval Personnel. The reporting date shall not be less than 30 days from the date of issuance of orders. Members who have served twenty months or more of active duty and who subsequently fail to meet participation requirements will be ordered to an additional active duty for training period not to exceed 45 days.

e. All 2 × 6, 3 × 6 and Active Mariner Reservists and first-term interservice transferees having a similar obligation who fail to meet participation requirements will be issued orders for additional ACDUTRA not to exceed 45 days, with a reporting date not earlier than 30 days nor later than 60 days from the issuance date. Requests for further delay must be approved by Chief of Naval Reserve or his/her designated representative. Extension of expiration of service to perform such duty is not authorized. Only one period of additional ACDUTRA may be scheduled to commence in any one fiscal year. Whenever possible, additional active duty for training orders shall be issued to commence during the same fiscal year in which the individual concerned did not satisfactorily perform. The performance of a period of additional ACDUTRA does not relieve the member of the requirement to complete the annual ACDUTRA during the fiscal year.

f. All female obligors who fail to maintain satisfactory participation will be nominated for extended ACDU or additional AC-DUTRA to the Chief of Naval Personnel (NMPC–913/Pers–R62) via the Chief of Naval Reserve or cognizant Naval Reserve Readiness Command.

g. Veteran members of the Selected Reserve who fail to participate satisfactorily shall be advised and counselled that their substandard performance places their continued unit affiliation in the Selected Reserve in jeopardy. In order to maintain unit mobilization capability the Chief of Naval Reserve or his designated representative is expected to monitor performance standards and may authorize termination from the Naval Reserve as necessary for those members whose performance has fallen below minimum standards. If it is determined that the member has no further potential for useful service under conditions of full mobilization and the situation is, within the purview of BUPERSMAN 3850300, discharge by reason of convenience of the government may be accomplished. Discharges of this nature require the approval of Commander, Naval Military Personnel Command (NMPC–913). When termination due to unsatisfactory performance is taken, the member's unit commanding officer will make a determination as to member's future eligibility for reenlistment or reaffiliation with the Naval Reserve and such determination will be placed on an Administrative Remarks, Page 13, service record entry. An adverse determination does not preclude a future reenlistment/affiliation if the circumstances which initially caused the termination change. However, approval of the Commander, Naval Military Personnel Command (NMPC–913) is required prior to reenlistment/affiliation.

h. Members who are to be transferred to Training/Pay Category H, under the provisions of subparagraph 305.3f, because of unsatisfactory participation, shall be notified in writing in the same menner described in paragraph 305.4b.