**RADIUM MINES, Inc.**
v.
**The UNITED STATES.**
No. 399-55.

United States Court of Claims.
July 12, 1957.

Charles R. Enos, Denver, Colo., for the plaintiff. Enos, Buchler & Buchler, Denver, Colo., were on the briefs.

S. R. Gamer, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for the defendant. Kendall M. Barnes, Washington, D. C., and Laurence H. Axman, Washington, D. C., were on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

For the purposes of the instant motions, the facts recited in the plaintiff's petition will be taken as true. The plaintiff made a contract to purchase certain mining claims from third persons and paid substantial sums of money on the contract, with the expectation of mining uranium ore from those claims and selling it to the United States at a profit. The United States would not buy the plaintiff's ore; the plaintiff was, as a consequence, unable to make its payments on its contract, and hence lost its property rights in the claims and lost the profits which it expected to make from working the claims.

The plaintiff says that it purchased the claims in question in reliance upon the Atomic Energy Act of 1946, 60 Stat. 755, 42 U.S.C.A. § 1801, and the Regulations and Circulars of the United States Atomic Energy Commission, and that the refusal of the United States to do what it represented in these writings that it would do created a liability on its part to the plaintiff on one or all of the following bases: (1) promissory estoppel, (2) conventional contract based on offer and acceptance, (3) deprivation of property without due process of law, or (4) taking of property without due process of law.

There would be no liability of the United States to the plaintiff on any of the plaintiff's theories, unless the United States promised, or represented, that if the plaintiff would acquire mining claims and find and mine the kind of uranium ore which it did find and mine, the United States would buy the ore. We therefore direct our inquiry to that question.

The Atomic Energy Commission, acting under the Atomic Energy Act of 1946, cited supra, and relevant Executive Orders, on April 11, 1948 issued Regulations designated Section 60.1 et seq. (10 C.F.R. 60.1). This document became known as Circular No. 1, and is strongly relied on by the plaintiff. We quote relevant parts of it.

"Sec. 60.1. Ten Year Guaranteed Minimum Price

"(a) Guarantee. To stimulate domestic production of uranium and in the interest of the common defense and security the United States Atomic Energy Commission hereby establishes the guaranteed minimum prices specified in paragraph (b) of this section, for the delivery to the Commission, in accordance with the terms of this section during the ten calendar years following its effective date (midnight, April 11, 1948), of domestic refined uranium, high-grade uranium-bearing ores and mechanical concentrates, in not less than the quantity and grade specified in paragraph (e) of this section.
* * *

"(b) Guaranteed Minimum Prices. The following minimum prices are established:

"(1) For uranium-bearing ores and mechanical concentrates, $3.50 per pound of $U_3O_8$ (uranium oxide) *determined by the Commission to be recoverable,* less cost per pound of refining such ores or concentrates to standards of purity required for the Commission's operations, to be determined by the Commission after assay of a representative sample. [Italics added.]

"(2) For refined uranium products $3.50 per pound contained $U_3O_8$ (uranium oxide).

Prices are f. o. b. railroad cars or trucks at shipping point designated by the Commission convenient to mine, mill, or refinery. Weights are avoirdupois dry weight.

"(c) Making an Offer. Anyone who has domestic refined uranium, high-grade uranium-bearing ores, or mechanical concentrates of the quantity and grade specified in paragraph (e) of this section, may offer it for delivery to the Commission by sending a letter or telegram addressed as follows:

"United States Atomic Energy Commission,

"Post Office Box 30, Ansonia Station,

"New York 23, N. Y.

"Attention: Raw Materials Operations

"With each offer there should be furnished a representative ten-pound sample and the following information:

"(1) Location of property;

"(2) Character of material offered for delivery (state whether refined uranium, mechanical concentrates, or uranium-bearing ores, indicating approximate composition);

"(3) Amount of material offered;

"(4) Location of material offered;

"(5) Origin of material if offered by other than producer;

"(6) If material is owned, in whole or in part, by any person other than the person making the offer, the name of each person having such ownership and nature of his rights; and

"(7) Name and address of person making the offer.

"(d) Purchase Contract. Upon receipt of an offer and sample, an analysis of the sample will be made. If the sample and the information furnished are determined by the Commission to meet the conditions of this section, the Commission will forward to the person making the offer a form of contract containing applicable terms and conditions ready for his acceptance. Prices will be not less than the applicable prices of paragraph (b) of this section.

"(e) Minimum Quantity and Grade. No delivery will be accepted under this section of less than ten short tons (2,000 pounds per ton) of ores or mechanical concentrates, nor of ore or mechanical concentrates which assay less than 10 percent $U_3O_8$ by weight. No delivery will be accepted under this section of less than one short ton of refined uranium, nor of refined uranium which contains by weight less than 97 percent $U_3O_8$ in black uranium oxide or 87 percent $U_3O_8$ in sodium uranate. However, the Commission will be interested in negotiating reasonable terms with respect to deliveries of high-grade ores and refined products in lesser quantities and grades than those specified in this section."

The plaintiff urges that Circular No. 1 was an offer, which ripened into a contract when it was accepted by the plaintiff's putting itself in a position to supply the ore or the refined uranium described in it. The Government urges that it was not an offer, but a mere invitation to the industry to make offers to the Government, which the Government could then accept or reject as it saw fit. We think the Government's in-

terpretation of Circular No. 1 is untenable. The title of Circular No. 1 was "Ten Year Guaranteed Minimum Price." Its purpose was to induce persons to find and mine uranium. The Government had imposed such restrictions and prohibitions upon private transactions in uranium that no one could have prudently engaged in its production unless he was assured of a Government market. It could surely not be urged that one who had complied in every respect with the terms of the Circular could have been told by the Government that it would pay only half the "Guaranteed Minimum Price," nor could he be told that the Government would not purchase his uranium at all.

■ The Government urges, further, that, assuming that the Circular was an offer, the plaintiff did not accept it because it failed to send a ten pound sample to the designated post office box in New York, along with the seven specified items of information. Again we think the Government's position is wrong. It was made plain to the plaintiff that fulfilling all the details prescribed in the Circular would have been futile, that the Government was not going to purchase its ore in any event. It was not necessary for the plaintiff to make these gestures in order to perfect its rights, if it otherwise had rights.

The reason for the Government's refusal to purchase the plaintiff's ore was that, because of its high lime content, the uranium in it could not be recovered by the processes used in any of the mills then in operation, at least in the area of the plaintiff's claims. Whether there was then known, or regarded as practicable, anywhere, a process by which it could be recovered does not appear from the record. The plaintiff says that the Government had nevertheless agreed to purchase the ore, apparently to stockpile it until a process was discovered or a suitable mill was built.

■ In paragraph (b) (1) of Circular No. 1, quoted above, we see that the Commission's offer was to purchase ore containing uranium *determined by the Commission to be recoverable.* This did not mean, of course, that the Commission could, in effect, renege on its offer by arbitrarily determining that the uranium in certain ores was not recoverable, if that was not the fact. But the Commission's determination in the instant case was, apparently, quite correct, and was by no means arbitrary. That, of course, means that the plaintiff did not have ore available which satisfied the conditions of the Government's offer to purchase; hence, no contract, either by offer and acceptance or by promissory estoppel, arose.

The plaintiff's situation was unfortunate in that its interest in its mining claims was precarious, because its contract for them was subject to forfeiture, and was in fact forfeited for non-payment of the balance of the purchase price. The plaintiff lost its claims before there was time to develop a process for recovering the uranium in its high lime content ore.

There is no merit in the plaintiff's claims that the Government deprived it of its property, or took its property without due process of law. The only basis which occurs to us for such claims would be that the Government's assertion of a monopoly over uranium was unconstitutional. The plaintiff does not urge that, and in view of the preoccupation of the entire world with the perils and problems of nuclear energy, it would not be possible to support such a contention.

The plaintiff's motion for summary judgment is denied. The Government's motions for judgment on the pleadings and for summary judgment are granted. The plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.