# ARMY AND AIR FORCE EXCHANGE SERVICE *v.* SHEEHAN

No. 80–1437.   Argued February 23, 1982—Decided June 1, 1982

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, POWELL, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. BURGER, C. J., concurred in the judgment.

*Samuel A. Alito, Jr.*, argued the cause for petitioner. With him on the briefs were *Solicitor General Lee, Assistant Attorney General McGrath, Deputy Solicitor General Geller*, and *William Kanter*.

*Ira E. Tobolowsky* argued the cause and filed a brief for respondent.

JUSTICE BLACKMUN delivered the opinion of the Court.

The issue presented by this case is whether the federal courts have jurisdiction over a civil action for monetary damages brought by a former military exchange employee who contests the validity of his discharge. The employee claims that federal jurisdiction exists under the Tucker Act, 28 U. S. C. § 1346(a)(2) (1976 ed., Supp. IV).

## I

### A

In 1962, respondent, Arthur Edward Sheehan, was selected for a data processing position with petitioner Army and Air Force Exchange Service (AAFES or Service).[1]

---

[1] AAFES is a nonappropriated fund instrumentality of the United States, that is, one that does not receive funds by congressional appropria-

Five years later, respondent was designated by the AAFES commander for participation in the Service's Executive Management Program (EMP); this program is "intended to fulfill the continuing requirement of AAFES for highly qualified and dedicated executive employees who will be readily available to meet the worldwide executive personnel requirements of AAFES." Army Regulation (AR) 60–21/Air Force Regulation (AFR) 147–15, ch. 5, § II, ¶ 5–6 (1 Aug. 1979).[2] Employees in the program enjoy special retention, insurance, and retirement benefits. On the other hand, those employees are subject to certain obligations, a principal one being that EMP personnel must accept transfer to any AAFES facility in this country or abroad. ¶ 5–9(a)(2). EMP status may be withdrawn for, among other things, "conduct off the job reflecting discredit upon AAFES." ¶ 5–9(c). Pursuant to the regulations governing the EMP, respondent was required to "acknowledg[e] in writing that he underst[ood] and accept[ed] the conditions of the EMP as prescribed by the Commander, AAFES." ¶ 5–7(b).

In 1975, while respondent was serving as a shopping center manager at Fort Jackson, S. C., he was arrested off the base for possession of controlled substances. Pursuant to a plea bargain, respondent pleaded guilty to four misdemeanor counts of violating state drug laws. He was sentenced to 18 months' probation and a $1,000 fine was imposed.

On March 16, 1976, respondent received advance written notice of separation from the Service for cause. Referring specifically to respondent's conviction, the notice stated that

tion. See 10 U. S. C. §§ 4779(c) and 9779(c). AAFES is under the control of the Secretaries of the Army and Air Force and, like other military post exchanges, is intended "to provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices." *Standard Oil Co.* v. *Johnson,* 316 U. S. 481, 484–485 (1942).

[2] The regulations cited are those currently in effect. They differ in no material respect from the regulations that were outstanding and applicable while respondent was employed by the AAFES.

the reason for the separation was "conduct off the job which reflects discredit on the AAFES and which is of such a nature that your retention in any capacity is incompatible with the best interests of AAFES." App. 11. James J. Stapleton, the AAFES General Manager for the Piedmont Area Exchange, signed the notice, but, because of respondent's participation in the EMP, prior approval had been obtained from Major General C. W. Hospelhorn, Commander, AAFES. Following an investigation, Stapleton issued a final notice of separation for cause, effective April 19, 1976. *Id.*, at 17. This notice advised respondent that he was to be dismissed "in view of the entire weight of evidence which resulted in your plea of guilty." *Ibid.*

Respondent, in accord with authorized AAFES procedures, filed an administrative appeal. The hearing examiner determined that the Service had acted in compliance with applicable laws and regulations, but concluded that respondent's conduct off the job did not reflect discredit on the AAFES and that his retention in some capacity was not incompatible with the interests of the Service. The examiner therefore recommended that respondent's appeal be granted and that he be reinstated with backpay to his former grade but transferred to an assignment in another region. General Hospelhorn, however, acting as the appellate authority, disagreed, and denied respondent's appeal.

In 1978, respondent, by a letter from counsel addressed to the new AAFES Commander, Major General Bobby W. Presley, requested reconsideration. *Id.*, at 40. Respondent asserted that his separation was contrary to AAFES rules and regulations and that he had been denied due process of law. General Presley reopened the case and referred it to Lieutenant General Charles E. Buckingham, Chairman of the Board of Directors of AAFES. At General Buckingham's request, the administrative record was reviewed by the Judge Advocate General of the Air Force. He concluded that the record evidence supported the charge that respond-

ent's conduct reflected discredit upon the AAFES and that his retention was inconsistent with the Service's best interests. The Judge Advocate General, however, agreed with respondent that General Hospelhorn was disqualified from acting as the appellate authority; he felt that it was appropriate for General Buckingham to act in that capacity, and he recommended that respondent's appeal be denied. General Buckingham followed that advice and denied respondent's appeal.

B

While the matter was pending before the Judge Advocate General, respondent filed suit against the AAFES in the United States District Court for the Northern District of Texas. The first count of respondent's complaint alleged that his rights to due process and to a free and impartial appeal pursuant to AAFES regulations were infringed when General Hospelhorn acted as both the separation authority and the appellate authority. In the second count, respondent claimed that the denial of his appeal was arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence and unwarranted by the facts, and in violation of statutory and constitutional provisions. Respondent sought reinstatement and damages, including backpay.

The District Court, without opinion, dismissed the complaint for want of subject-matter jurisdiction. App. to Pet. for Cert. 17a.

The United States Court of Appeals for the Fifth Circuit reversed. It concluded that the Tucker Act, 28 U. S. C. § 1346(a)(2), which gives the federal courts jurisdiction over certain suits against the United States founded upon express or implied contracts, provided a basis for jurisdiction over respondent's claims for monetary relief. 619 F. 2d 1132 (1980). Whether respondent's employment was initiated by appointment or by contract, the court held, the AAFES regulations providing for separation for cause only under certain conditions and guaranteeing an administrative appeal "mani-

fest[ed] the understanding of the parties concerning discharge procedures while Sheehan *continued* in AAFES employment." *Id.*, at 1138 (emphasis in original). Accordingly, the court considered those regulations to be "part of a collateral implied-in-fact contract between Sheehan and the AAFES that the AAFES would adhere to the regulations in its dealings with him." *Ibid.* In the court's view, the understanding of the parties was reinforced by the well-established legal principle that a federal agency must comply with its own regulations. The court concluded that respondent's allegation that his dismissal violated applicable regulations was "equivalent to an allegation of breach of an implied-in-fact contract," *ibid.*, and that the District Court therefore had erred in ruling that it had no jurisdiction to award respondent monetary relief.[3]

Because this ruling appeared to be in conflict with our precedents, we granted certiorari. 454 U. S. 813 (1981).

## II

The AAFES, like other military exchanges, is an " 'ar[m] of the government deemed by it essential for the performance of governmental functions . . . and partake[s] of whatever immunities it may have under the constitution and federal

---

[3] Reasoning that § 1346(a)(2) does not confer federal jurisdiction to award nonmonetary relief, the Court of Appeals looked to the general federal-question jurisdictional provision, 28 U. S. C. § 1331(a), to support its finding of jurisdiction over respondent's request for reinstatement. Although the court concluded that § 1331(a) does not constitute a waiver of sovereign immunity, it interpreted the 1976 amendment to § 10 of the Administrative Procedure Act, 5 U. S. C. § 702, as effecting a waiver for actions against federal agencies, where the agency conduct is otherwise subject to judicial review. 619 F. 2d, at 1138–1140. Given its determination that the District Court could provide respondent both monetary and nonmonetary relief under alternative statutes, the Court of Appeals held, finally, that the District Court did not have jurisdiction over respondent's complaint pursuant to the mandamus statute, 28 U. S. C. § 1361. 619 F. 2d, at 1140–1141. Neither side seeks review of those rulings here.

statutes.'" *United States* v. *Mississippi Tax Comm'n*, 421 U. S. 599, 606 (1975), quoting, with approval, language of the District Court in the same case, 378 F. Supp. 558, 562–563 (SD Miss. 1974). As a result, the federal courts may entertain actions against the Service only if Congress has consented to suit; "a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States* v. *Testan*, 424 U. S. 392, 399 (1976), quoting *United States* v. *King*, 395 U. S. 1, 4 (1969).

The Tucker Act effects one such explicit waiver when it provides in pertinent part:

"The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

. . . . .

". . . Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, *or upon any express or implied contract with the United States*, or for liquidated or unliquidated damages in cases not sounding in tort. . . . For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service . . . shall be considered an express or implied contract with the United States."[4] 28 U. S. C. § 1346(a)(2) (1976 ed., Supp. IV) (emphasis added).[5]

---

[4] The last sentence of § 1346(a)(2) was added in 1970 by Pub. L. 91–350, 84 Stat. 449, following this Court's decision some years before in *Standard Oil Co.* v. *Johnson*, 316 U. S. 481 (1942). Relying on the Court's observation in that case that the "Government assumes none of the financial obligations" of military post exchanges, *id.*, at 485, the Court of Claims, in a series of decisions, had held that it could not entertain contract claims against nonappropriated fund instrumentalities. See *United States* v. *Hopkins*, 427 U. S. 123, 125 (1976). In 1970, Congress sought to close this "loophole" by expressly affording contractors a Tucker Act remedy against such instrumentalities. See *id.*, at 126; S. Rep. No. 91–268, p. 2 (1969); H. R. Rep. No. 91–933, p. 2 (1970).

[5] Section 1346(a)(2) gives the district courts concurrent jurisdiction with the Court of Claims over all civil actions or claims seeking damages of

Respondent does not assert Tucker Act jurisdiction on the basis of the Constitution or a specific statute or regulation. He claims only that the Tucker Act affords him a remedy because of an "express or implied contract with the United States" agreed to by the parties. Specifically, respondent urges that he became an AAFES employee, or at least entered the EMP, by virtue of an employment contract, not by appointment, and that the AAFES regulations governing dismissal of employees created an implied contract. We must reject both contentions.

## A

In determining whether respondent's employment was the result of appointment or contract, we look to *United States* v. *Hopkins*, 427 U. S. 123 (1976), a wrongful-discharge action brought by an AAFES employee who alleged that his separation from the Service constituted a breach of an employment contract. The Court in its *per curiam* opinion in *Hopkins* noted that Tucker Act jurisdiction may be premised on an employment contract, as well as on one for goods or other services, *id.*, at 126, and that the AAFES regulations authorize the Service to enter into service contracts. *Id.*, at 127–128. But the Court also observed that many AAFES employees are appointed to their positions, and it remanded the case for consideration of the question whether the plaintiff had been employed by contract or by appointment, a determination dependent upon "an analysis of the statutes and regulations previously described in light of whatever evidence is adduced on remand as to plaintiff's particular status in this case." *Id.*, at 130.

Although respondent alleges that he was employed, both initially and upon entering the EMP, by express employment

---

$10,000 or less. The Court of Claims has sole jurisdiction under the Tucker Act, however, for claims greater than $10,000. See 28 U. S. C. § 1491 (1976 ed., Supp. IV). Both jurisdictional provisions are otherwise identical. See *Richardson* v. *Morris*, 409 U. S. 464, 466 (1973); *United States* v. *Sherwood*, 312 U. S. 584, 590–591 (1941).

contracts, he points to nothing in the record or in the relevant AAFES regulations that substantiates that claim. In fact, his complaint supports the contrary view. The complaint observes that respondent was first "employed" by the AAFES in 1962, App. 3; the regulations pertaining to "employees" refer to Service personnel as "Federal employees of an instrumentality of the United States" who are appointed to their positions. AR 60–21/AFR 147–15, ch. 1, § I, ¶ 1–6(a); ch. 2, § I, ¶¶ 2–2, 2–3 (1 Aug. 1979). Moreover, if, as respondent alleges, he was "employed" in a data processing position, AAFES regulations prohibit the Service from negotiating a contract with him. See AR 60–20/AFR 147–14, ch. 3, § III, ¶ 3–26(d) (15 Nov. 1978).

Respondent's selection to the EMP plainly was pursuant to appointment. The regulations governing the EMP appear in the provision entitled "Exchange Service Personnel Policies," AR 60–21/AFR 147–15, ch. 5, § II, rather than in the regulation providing for service contracts, AR 60–20/AFR 147–14, ch. 3, §§ II, III.[6] And, in language that connotes appointment rather than contract, the EMP regulations refer to one's "nomination, selection, and designation to EMP status," AR 60–21/AFR 147–15, ch. 5, § II, ¶ 5–8.[7] Furthermore, respondent complains that he was separated from the

---

[6] The AAFES regulations define "service contract" as follows:

"A contract whereby a contractor performs a service for AAFES off a military installation, such as laundry, drycleaning, photo processing, and repair service. This type contract may also include procurement of direct services such as janitorial and window cleaning service." AR 60–20/AFR 147–14, App. A, ¶ A–8(e) (15 Nov. 1978).

[7] Respondent points to the portion of the EMP regulations providing that an EMP employee must have "acknowledged in writing that he understands and accepts the conditions of the EMP as prescribed by the Commander, AAFES." AR 60–21/AFR 147–15, ch. 5, § II, ¶ 5–7(b). An employee's acknowledgment and acceptance of the conditions of his employment, however, hardly demonstrate that he is employed pursuant to a contract; surely, an employer could require a nominee to acknowledge and accept the conditions of his appointment.

EMP in violation of discharge procedures described in the regulation applicable to appointed employees, not to those who have contracted with the AAFES to provide services. App. 4–5, 7; see AR 60–21/AFR 147–15, ch. 3.

Despite these clear indications that respondent was appointed to his position, he maintains, citing *United States* v. *Hopkins, supra,* that he is entitled to an evidentiary hearing aimed at ascertaining the nature of his employment status. In *Hopkins,* however, the plaintiff's complaint alleged that he had been employed pursuant to contract. The Court of Claims did not examine this allegation because it erroneously assumed that AAFES employees could never be appointed. This Court held that the plaintiff's allegation was sufficient to withstand the Government's motion to dismiss for want of jurisdiction and remanded the case because "the question of whether plaintiff was employed by virtue of a contract or by appointment is not susceptible of determination at this time." 427 U. S., at 130. Resolution of the question, the Court noted, depended upon an analysis of the applicable statutes and regulations "in light of whatever evidence is adduced on remand as to plaintiff's particular status in this case." *Ibid.*[8]

Respondent's complaint, in contrast, does not claim that he was employed pursuant to a contract. In fact, it supports the Government's view that he was appointed. Even after the AAFES moved in the District Court to dismiss for want of jurisdiction on the ground that respondent had been "an appointed (non-contract) employee," Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment 8, respondent did not seek to amend his complaint and did not allege any facts indicating the existence of an employment contract. See Memorandum of Authorities in Opposition to Defendants' *(sic)* Motion to Dismiss or in the Alternative, for Summary

---

[8] We are advised that Hopkins' suit was settled on the remand, and that no further inquiry was made into his employment status. See Brief for Petitioner 16, n. 9; Brief for Respondent 14; Tr. of Oral Arg. 28.

Judgment 5–6; see also *id.*, at 1–3 (referring to respondent's status as an "employee" and to violations of regulations governing AAFES employees).[9] Moreover, as discussed above, all the evidence in the record is to the effect that respondent was appointed to his positions with the AAFES. Under these circumstances, we conclude that a remand on this question would serve no purpose and that respondent will not now be able to adduce evidence, which he has heretofore declined to present, that he was employed—either initially or upon entering the EMP—pursuant to an express employment contract.

## B

The Court of Appeals' decision rests on a different theory—that, whether or not respondent was initially employed by virtue of a contract or by appointment, the AAFES regulations governing separation procedures created an implied-in-fact contract that the Service would adhere to those regulations while respondent continued in AAFES employment.[10] This approach, however, is foreclosed by our prior decisions.

In *United States* v. *Testan*, 424 U. S. 392 (1976), the Court concluded, without dissent, that the Tucker Act did not confer jurisdiction over a complaint filed by civil service employees who claimed that they were entitled to reclassification at a higher grade. The Act, the Court observed, "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money dam-

---

[9] Respondent did seek to amend his complaint, however, following the Court of Appeals' decision that the AAFES discharge regulations created an implied-in-fact contract between the parties. The amended complaint alleges that a contract was executed when respondent signed an acknowledgment of the conditions of the EMP, includes a breach-of-contract count, and refers repeatedly to the "employment agreement." First Amended Complaint 2, 6–7.

[10] Claims grounded on implied-in-fact contracts may be brought under the Tucker Act, but the Act does not confer jurisdiction with respect to contracts implied in law. See *Hatzlachh Supply Co.* v. *United States*, 444 U. S. 460, 465, n. 5 (1980).

ages." *Id.*, at 398. Rather, a plaintiff's "asserted entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Id.*, at 400, quoting *Eastport S.S. Corp.* v. *United States*, 178 Ct. Cl. 599, 607, 372 F. 2d 1002, 1009 (1967). The Court explicitly rejected the argument that "the violation of any statute or regulation relating to federal employment automatically creates a cause of action against the United States for money damages." 424 U. S., at 401; see also *United States* v. *Hopkins*, 427 U. S., at 130.

As *Testan* makes clear, jurisdiction over respondent's complaint cannot be premised on the asserted violation of regulations that do not specifically authorize awards of money damages.[11] Respondent cannot escape the force of *Testan* by relying on the Court's observation that the plaintiffs in that case did not "rest their claims upon a contract," 424 U. S., at 400, and distinguishing this case on the ground that the regulations effected an implied contract. To accept this reasoning would be to undermine the Court's ruling in *Testan* that the Tucker Act provides a remedy only where damages

---

[11] Like *Testan*, this case does not involve a suit "for money improperly exacted or retained" or a claim based on a regulation that promises money. 424 U. S., at 401, 402. This case is therefore distinguishable from those cited by respondent where contracts were inferred from regulations promising payment. See *Griffin* v. *United States*, 215 Ct. Cl. 710, 714–715 (1978); *New York Airways, Inc.* v. *United States*, 177 Ct. Cl. 800, 816–817, 369 F. 2d 743, 751–752 (1966); *Radium Mines, Inc.* v. *United States*, 139 Ct. Cl. 144, 147–148, 153 F. Supp. 403, 405–406 (1957); *Aycock-Lindsey Corp.* v. *United States*, 171 F. 2d 518, 521 (CA5 1948); *Augusta Aviation, Inc.* v. *United States*, 500 F. Supp. 785, 786–787 (SD Ga. 1980), rev'd, 671 F. 2d 445 (CA11 1982). Because respondent has not demonstrated that the parties entered into an express contract, this case is also different from those where regulations were considered an implied part of an express contract. See *Bodek* v. *Department of Treasury, Bureau of Public Debt*, 532 F. 2d 277, 279, n. 7 (CA2), cert. denied, 429 U. S. 849 (1976); *Wolak* v. *United States*, 366 F. Supp. 1106, 1110 (Conn. 1973); *Spicer* v. *United States*, 217 F. Supp. 44, 50 (Kan. 1963), aff'd, 332 F. 2d 750 (CA10 1964).

claims against the United States have been authorized explicitly. Admittedly, the *Testan* plaintiffs did not assert the existence of an employment contract, but neither did respondent until very late in the litigation. And if employment statutes and regulations create an implied-in-fact contract, surely the Court would have so noted in *Testan* instead of directing that the complaint be dismissed. See *id.*, at 408. Moreover, the plaintiff in *Hopkins* did claim that he had been employed pursuant to a contract; the Court's remand for consideration of the plaintiff's status as an appointed or contract employee, despite a claim that his discharge contravened applicable regulations, clearly suggests that employment regulations do not automatically give rise to an implied-in-fact contract.[12]

In addition to mandating different results in *Testan* and *Hopkins*, the Court of Appeals' approach would "rende[r] superfluous" "many of the federal statutes—such as the Back Pay Act—that expressly provide money damages as a remedy against the United States in carefully limited circumstances." *United States* v. *Testan*, 424 U. S., at 404. The Back Pay Act, which permits an employee to recover lost wages due to "an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part" of the compensation to which he was otherwise entitled, 5 U. S. C. § 5596(b)(1) (1976 ed., Supp. IV), expressly denies that cause of action to AAFES personnel. See 5 U. S. C. § 2105(c)(1) (1976 ed., Supp. IV). Congress' intent to prohibit a backpay claim by a Service employee would obviously be subverted if the employee could sue under the

---

[12] The Court's observation in *Testan* that the case was "not one concerning a wrongful discharge or a wrongful suspension," 424 U. S., at 402, does not indicate, as respondent urges, that any termination or suspension suit may be brought under the Tucker Act. In *Hopkins*, the Court relied on *Testan* in disposing, summarily and adversely, of the contention that "plaintiff's discharge in violation of executive regulations constituted a claim enforceable under the Tucker Act." 427 U. S., at 130.

Tucker Act whenever he asserted a violation of the Service's regulations governing termination. And the impact of the Court of Appeals' decision would not be limited to such circumstances: as counsel for respondent appeared to concede at oral argument, the Court of Appeals' reasoning would extend Tucker Act jurisdiction to reach any complaint filed by a federal employee alleging the violation of a personnel statute or regulation. Tr. of Oral Arg. 20–21.

We therefore conclude that *Testan* is controlling, and we hold that the Court of Appeals erred in implying a contract based solely on the existence of AAFES personnel regulations and in premising Tucker Act jurisdiction on those regulations, which do not explicitly authorize damages awards. Because the court's judgment may not be sustained on the ground that respondent was hired pursuant to an express employment contract, we find that the Tucker Act did not confer jurisdiction over respondent's claims for monetary relief.

The judgment of the Court of Appeals is therefore reversed.

*It is so ordered.*

THE CHIEF JUSTICE concurs in the judgment.