The GEORGIA GAZETTE PUBLISHING COMPANY, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF DEFENSE, Caspar Weinberger, Secretary of Defense; and Maj. Gen. John R. Galvin, Commanding General, Fort Stewart, Georgia, Defendants,

MNC of Hinesville, Inc., Intervenor.

No. CV483–002.

United States District Court,
S.D. Georgia,
Savannah Division.

Jan. 17, 1983.

James E. Stephenson, Smith, Currie & Hancock, Atlanta, Ga., for plaintiff.

Melissa S. Mundell, Asst. U.S. Atty., Savannah, Ga., for defendants.

Brent Savage, Adams, Gardner, Ellis & Inglesby, Savannah, Ga., for intervenor.

## ORDER

EDENFIELD, District Judge.

Before the Court is plaintiff's motion for preliminary injunctive relief. A hearing was held on this matter on January 7, 1983. Plaintiff's motion for a temporary restraining order was denied and further proceedings held in abeyance until the parties had briefed the jurisdictional issue raised by the government.

### Factual Background

During the fall of 1982, the Department of the Army solicited bids for the publication of the Fort Stewart post newspaper, *The Patriot.* The Army planned to change the newspaper's format from that of an Army-authorized publication (meaning no commercial advertising) to a civilian enterprise publication (meaning advertisement supports the publication with no cost to the Army). Bids for the civilian enterprise publication were submitted by plaintiff, the Georgia Gazette Publishing Company ("Gazette"), MNC of Hinesville, Inc. ("MNC") and Winson Publishing Company.

The Army's bid solicitation letter to the plaintiff was dated October 29, 1982. Between that date and November 11, 1982, when plaintiff's president, Albert Scardino, submitted the written proposal, Mr. Scardino had several conversations with personnel in the Public Affairs Office (PAO) at Fort Stewart. During these conversations, Mr. Scardino asked questions about the factors

for evaluation that were to be included in the Gazette's proposal. When Mr. Scardino inquired about the Army's flexibility in some of the requirements (i.e., standard broadsheet vice a tabloid format), his impression of the PAO's advice was that he could recommend what he felt would be best, and the details would be worked out later. After both the Gazette and MNC recommended a more standard-size publication before the bids were submitted, the Army did amend the requirements to a smaller size.

After reviewing the three proposals submitted, a board consisting of Army and civilian personnel selected MNC of Hinesville, Inc. for the award of the license agreement. At the hearing in this court, Mr. Scardino testified that after submitting its proposal, the Gazette was not contacted by the Army until it was notified by telephone that the award was given to MNC. Upon being so notified, Mr. Scardino contacted the PAO and inquired as to the reasons for rejection of the Gazette's proposal. Mr. Scardino testified that he was told that the Gazette's proposal was downgraded for several reasons. These downgraded areas included: (1) the Gazette's recommendation that the newspaper be produced in a standard size; (2) the Gazette's proposed average weekly circulation; and (3) the Gazette's proposal to install word processing equipment on the Army base in lieu of duplicative typesetting equipment in a Hinesville office. In fact, the Army deleted the Gazette's offer of word processing equipment without consideration. At the hearing, a member of the committee was unable to articulate the reasons, legal or otherwise, for this action.

Plaintiff states now that it was informed and understood that it would be afforded an opportunity to clarify, discuss, and elaborate on its proposal before any award was made. The defendants, however, have apparently refused to afford the plaintiff any opportunity to clarify, discuss, or elaborate on its proposal nor have they meaningfully discussed with plaintiff the reasons for the rejection of its proposal.

On November 26, 1982, plaintiff lodged a formal protest with the office of Major General John R. Galvin, Commanding General of Fort Stewart. Plaintiff was notified by telephone that the protest was denied, that officials at Fort Stewart would not meet with the plaintiff to discuss the protest, and that plaintiff would not be provided with copies of the committee's evaluations of the proposals. On that same date, plaintiff submitted a protest in this matter to the U.S. General Accounting Office. On December 23, 1982, the GAO dismissed the protest because the contract did not involve the direct expenditure appropriated funds. The licensing agreement between MNC and the defendants was executed on December 30, 1982, with the first issue to be distributed on January 12, 1983.

On January 7, 1983, plaintiff filed the instant complaint for injunctive relief and a motion for expedited discovery. On that same date, MNC's motion to intervene was granted. At the hearing held on January 7, 1983, the defendants raised the issue of jurisdiction or the lack thereof in this court. Approximately three hours of testimony was offered on the merits of the complaint. It became clear, however, that plaintiffs would be unable to prove their allegations without a limited amount of discovery being allowed. Accordingly, because I find that this Court has subject matter jurisdiction of this complaint for reasons which will be set forth, *supra,* I also will grant plaintiff's motion for expedited discovery. Plaintiff's motion for a TRO stands denied.

### Court's Analysis

 As a threshold matter, the defendants raised the issue of lack of subject matter jurisdiction based upon the provisions of the Tucker Act, 28 U.S.C. § 1346, 1491 and the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 39 (1982). Both of these statutes place jurisdiction in the Court of Claims. However, jurisdiction lies under the Tucker Act only where plaintiff's claim is for money damages. *Rowe v. United States,* 633 F.2d 799, 802 (9th Cir.1980), *cert. denied* 451 U.S. 970,

101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). The Tucker Act only applies to actions based on claims under government contracts. *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 967 (D.C. Cir.1982). The present action seeks only equitable relief and the ground for relief does not involve a government contract. Thus, the Tucker Act is not applicable. Moreover, under § 133(a) of the Federal Courts Improvement Act, the new United States Claims Court is given exclusive jurisdiction to grant equitable relief in cases involving pre-award contract claims. When the contract in question already has been awarded, jurisdiction properly lies in the federal district court. *John C. Grimberg Co. v. United States,* 1 Cl.Ct. 253 (1982).

Thus, the issue before the Court is whether 5 U.S.C. § 702,[1] which abrogates sovereign immunity in certain actions for non-monetary relief, constitutes a waiver of the sovereign immunity defense for the purposes of the general federal question jurisdictional statute, 28 U.S.C. § 1331, in actions involving federal agencies or their officials. Section 1331, as amended provides that:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331 (Supp. IV 1980).

▇▇ It is well-settled that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). However, in *Sheehan v. Army and Air Force Exchange Service,* 619 F.2d 1132, 1139 (5th Cir.1980), *rev'd on other grounds,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982), the Court of Appeals concluded that 5 U.S.C. § 702 waived the sovereign immunity defense in actions for non-monetary relief under § 1331. Moreover, since the decision in *Scanwell Laboratories v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970), this Circuit has held that disappointed bidders have standing to challenge a contract award. *See Hayes International Corporation v. McLucas,* 509 F.2d 247 (5th Cir.1975).

While § 702 is almost uniformly seen by the courts as a waiver of sovereign immunity, the Supreme Court has explicitly stated that "the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions." *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). "Thus, the APA may confer standing, but this court must look elsewhere for jurisdiction to entertain the disappointed bidder's claim." *TM Systems, Inc. v. United States,* 473 F.Supp. 481 (D.Conn.1979). In *TM Systems,* cited by intervenors as on "all-fours" with the facts at hand, the plaintiff bidder brought an action for an injunction restraining the contracting officer of the FAA from granting a contract to anyone but the plaintiff. The district court concluded that, under the circumstances, the district court lacked jurisdiction. In *TM,* however, the plaintiff claimed that the contract was to be improperly awarded but plaintiff did not cite any federal regulation which was violated in support of jurisdiction under 28 U.S.C.

---

1. The text of § 702 follows:

 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

§ 1331.[2] In denying the plaintiff's claim that jurisdiction was proper under § 1331, the court noted:

> The better view appears to be that where the matter in issue involves a question arising under the Constitution, laws or treaties of the United States, and the question concerns agency action, then § 1331 confers jurisdiction for the federal court to review the action, assuming the matter is an actual case or controversy and is ripe for review, and assuming also that the claimant has sufficient interest, or standing, to bring the claim.

*TM Systems, Inc., supra,* at 486. This argument is not applicable to the facts at hand.

 The Court is confronted with a challenge to procedures followed by the defendants, as was the court in *Collins Co. v. Claytor,* 476 F.Supp. 407, 409 (N.D.Ga.1979). The procedures which the defendants are required to follow in the making of contracts for civilian enterprise publications are set out in 32 C.F.R. § 202.11 (1981).[3] These regulations are deemed issued by the Secretary of Defense pursuant to 5 U.S.C. § 301. As such, they have the force of law. *Moran Brothers, Inc. v. United States,* 346 F.2d 590 (Ct.Cl.1965). Therefore, because the plaintiff: (1) alleges violation of a regulation which has the force of law; (2) possesses standing; and (3) alleges a violation of § 702 which in turn waives sovereign immunity, I find this Court has jurisdiction of plaintiff's complaint. However, I would remind the plaintiffs of the heavy burden they bear in convincing the Court that there was no reasonable basis for the Army's decision. *See Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260 (5th Cir.1978).

Finally, the Court grants plaintiff's motion for limited discovery to prepare evidence in support of its motion for injunctive relief. Although arguably an inference has been raised by plaintiff that proper procedures were not followed by the Army in considering the proposals, there is insufficient evidence available to the Court to make a determination on the merits at this point. Depositions of the members of the panel which reviewed the proposals are appropriate. Also, some limited document production should be permitted.

The plaintiff shall have until February 4, 1983, to conduct this discovery. On February 4, 1983, another hearing has been scheduled at 10:00 a.m. for the plaintiffs to present the evidence developed during discovery. Any additional briefs which the parties may wish to submit to the Court must be received by 5:00 p.m., February 3, 1983.

---

**2.** The reported facts of this case are unclear on whether the suit was brought before or after the award of the contract.

**3.** Specifically, plaintiff's complaint is based upon an alleged violation of the following: In selecting a civilian enterprise publication for distribution, fair and equal opportunity will be afforded any responsible bidder who may wish to submit a proposal to publish such a publication. 32 C.F.R. § 202.11(b)(1).