# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2010

No. 09-11127

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GI-HWAN JEONG,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, PRADO, and ELROD, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Gi-Hwan Jeong, a South Korean national, was convicted in South Korea for bribing American public officials in exchange for their assistance in landing a lucrative telecommunications contract. Jeong was sentenced to time served and ordered to pay a fine. Later that year, the United States induced Jeong to travel from South Korea to Dallas, Texas. When he arrived, Jeong was arrested and subsequently indicted on the basis of the same bribery scheme that had led to his conviction in South Korea. Jeong moved to dismiss the indictment on the

ground that the United States lacked jurisdiction to prosecute him for these offenses. The district court denied the motion. Jeong pleaded guilty, but reserved the right to appeal the denial of his motion to dismiss the indictment. We AFFIRM.

## I.

In 2001, the Army and Air Force Exchange Service (AAFES) solicited competitive bids for a telecommunications contract in South Korea (officially known as the Republic of Korea).[1] Under the proposed contract terms, AAFES agreed to pay $206 million over ten years, in exchange for the provision of internet and related telecommunication services at United States military installations in South Korea. Jeong sought to land the contract for his company, Samsung Rental Company, Limited (SSRT). By bribing American public officials, Jeong successfully landed the contract and maintained it for several years, despite allegations of poor performance. The recipients of Jeong's bribes were two AAFES employees: Clifton Choy and Henry Lee Holloway. Choy was the AAFES Services Program Manager of the Pacific Region, and he was responsible for operations in several countries including South Korea. Holloway was an AAFES general store manager who directed operations at several military bases in South Korea.

The bribery scheme between Jeong, Choy, and Holloway began in October 2001, and continued through 2006. To ensure that he submitted the winning bid for the AAFES contract, Jeong agreed to pay Choy $20,000 in exchange for

---

[1] AAFES is a joint military command of the Department of Defense that provides goods and services to United States military personnel and their families around the world. It is a "non-appropriated fund instrumentality": it does not receive funds by congressional appropriation. *Army and Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 729 n.1 (1982). Like other military post exchanges, AAFES "is intended to provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices." *Id.* (internal quotation marks omitted) (citing *Standard Oil Co. v. Johnson*, 316 U.S. 481, 484–85 (1942)).

confidential information about the bids SSRT's competitors had submitted. With Choy's guidance, Jeong successfully won the contract in November 2001. Over the next several years, Jeong provided Choy with approximately $80,000 in cash and entertainment, and Choy continued to use his official position and influence to protect, maintain, and further SSRT's contractual relationship with AAFES. In 2003, amidst allegations of SSRT's poor performance, Jeong began making bribes to Holloway in exchange for Holloway's support of his company. Over the next two years, Jeong provided Holloway with approximately $70,000 in cash, entertainment, travel expenses, and stock options. Holloway in turn used his official position and influence to maintain SSRT's contract with AAFES.

Jeong's scheme with Choy and Holloway began to unravel in 2006, when a former SSRT employee reported Jeong's unlawful conduct to a unit of the U.S. Air Force Office of Special Investigations (AFOSI) in South Korea. By mid-year, parallel investigations into the bribery scheme were underway: the Korean National Police began investigating SSRT and its employees, and AFOSI investigated Holloway. The two agencies agreed to share information. As a result of the investigations, AAFES ended the contract with SSRT in 2007. The Ministry of Justice in South Korea (Korean Ministry) eventually charged Jeong with violating a law that prohibits bribery of a foreign public official in connection with international trade. In early 2008, a Korean district court convicted Jeong and imposed a fine of 10 million South Korean won (then approximately worth $10,500). The court also imposed a fine of 20 million won (then approximately worth $21,000) against SSRT. The court gave Jeong credit for the 58 days of pretrial detention he had served, and ordered no further incarceration. The conviction and sentence were affirmed on appeal.

The United States continued to investigate the bribery scheme after Jeong's conviction. On September 3, 2008, it submitted to South Korea a formal

request for assistance under the mutual legal assistance treaty between the two countries.[2]  The United States sought evidentiary materials from Jeong's trial for purposes of its investigation of Choy, Holloway, and a third American, and in its request it stated: "The [G]overnment understands that Jeong was convicted earlier this year of the offense of Interference with Foreign Trade in the . . . Republic of Korea, and therefore, it is not seeking to further prosecute Jeong."  In early November 2008, Jeong exchanged a series of emails with an AAFES employee that discussed the possibility of Jeong traveling to AAFES headquarters in Dallas, Texas.  AAFES invited Jeong to the United States to discuss his claims that AAFES owed money to another one of his companies, Concordia.[3]  But the United States had no intention of having such a discussion.  On November 14, 2008, it obtained an arrest warrant for Jeong, and upon Jeong's arrival in Dallas four days later, he was arrested.

Jeong was initially charged with two counts of federal bribery under 18 U.S.C. § 201(b)(1).  A superseding indictment in May 2009 added one count of conspiracy under 18 U.S.C. § 371, and two counts of honest services wire fraud under 18 U.S.C. §§ 1343, 1346.[4]

In the district court, Jeong moved to dismiss the indictment on three grounds.  First, he argued that the federal bribery statute does not have extraterritorial application.  Next, he asserted that his prosecution by the United

---

[2] *See* Treaty Between the United States of America and the Republic of Korea on Mutual Legal Assistance in Criminal Matters, U.S.-S. Kor., Nov. 23, 1993, S. TREATY DOC. NO. 104-1 (1995).

[3] After AAFES severed ties with SSRT in 2007, AAFES transferred the contract to LG Dacom.  Jeong subsequently obtained a subcontract with LG Dacom for Concordia.  When AAFES discovered the Concordia subcontract, it instructed LG Dacom to terminate it.  Jeong then submitted a claim to AAFES complaining of its interference with the subcontract.

[4] Jeong stipulated below that over the course of the bribery scheme, he exchanged emails with Holloway that traveled through AAFES servers in Dallas, Texas.

No. 09-11127

States violated a multilateral treaty to which both the United States and South Korea are signatories: the Convention on Combating Bribery of Foreign Public Officials in International Business Transactions, Dec. 17, 1997, S. TREATY DOC. NO. 105-43 (1998) (hereinafter the Convention). The Convention, Jeong argued, prohibits a signatory party from prosecuting a foreign national whose alleged offenses occurred overseas. Finally, Jeong asserted that Article 4.3 of the Convention prohibits multiple prosecutions of the same individual for the same offense. Because the United States had waived jurisdiction, Jeong contended, South Korea exclusively had jurisdiction to prosecute him, and the present indictment thus violated the treaty.

The Korean Ministry submitted a letter to the district court, styled as an amicus brief, in support of Jeong's motion to dismiss. The Ministry argued that because the United States had not previously asserted jurisdiction to prosecute Jeong, the United States had effectively waived that right. As further evidence of waiver, the Ministry pointed to the statement in the United States' request for mutual legal assistance that stated it was not seeking to prosecute Jeong. The Ministry also argued, agreeing with Jeong's motion, that the current prosecution violated Article 4.3 of the Convention. Attached to its letter were copies of four letters the Ministry had submitted to the U.S. Department of Justice, each of which expressed concern over Jeong's arrest.

After a hearing in May 2009, the district court denied Jeong's motion to dismiss. The court concluded that the federal bribery laws have extraterritorial application, and that the Convention was neither self-executing nor a bar to multiple prosecutions. Jeong then pleaded guilty to all five counts in the superseding indictment, but reserved his right to appeal the denial of his motion. At Jeong's sentencing hearing in November 2009, the district court imposed concurrent sentences of sixty months on all five counts, and a $50,000 fine.

5

No. 09-11127

Jeong timely appealed the denial of his motion to dismiss the indictment.

On appeal, Jeong makes two arguments. First, he again contends that his prosecution in the United States violates Article 4.3 of the Convention. Second, and in the alternative, he asserts that the United States expressly and impliedly waived its jurisdiction to prosecute him, and that therefore his indictment is invalid. Jeong presents his waiver argument as separate and distinct from his treaty-violation claim, although in the district court he combined them. Jeong's two discrete arguments are echoed in the Korean Ministry's amicus brief in support of Jeong, which asserts that the United States "deferred jurisdiction [over Jeong] to the Korean government," and that, in any event, the indictment violates Article 4.3 of the Convention.

## II.

## A.

We review Jeong's treaty claim *de novo*. *See United States v. Jimenez-Nava*, 243 F.3d 192, 195 (5th Cir. 2001). The Convention, adopted by the Organization for Economic Cooperation and Development, was ratified and implemented in the United States in 1998.[5] Article 4 of the Convention, titled "Jurisdiction," contains four provisions. The third provision states:

> When more than one Party has jurisdiction over an alleged offence described in this Convention, the Parties involved shall, at the request of one of them, consult with a view to determining the most appropriate jurisdiction for prosecution.

---

[5] The Convention criminalizes bribery of foreign public officials in international business transactions. Its implementation in the United States amended the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-1 *et seq*. *United States v. Kay*, 359 F.3d 738, 753–54 (5th Cir. 2004).

No. 09-11127

The Convention, art. 4.3.[6] Jeong asserts that this language establishes a *non bis in idem* provision, meaning that it forbids more than one trial for the same offense. *See* BLACK'S LAW DICTIONARY 1150 (9th ed. 2009) ("*non bis in idem*" means "not twice for the same thing," and usually refers to the bar against double jeopardy). In his view, the provision's plain meaning is that countries with concurrent jurisdiction must always consult to determine the one appropriate jurisdiction to prosecute an offense—and once that determination is made, any subsequent prosecutions for the offense are prohibited. We disagree; Article 4.3 is not a bar to multiple prosecutions. Because we reject Jeong's reading of that treaty provision, we need not address whether Article 4.3 is judicially enforceable.

We apply the traditional canons of interpretation to Article 4.3. "The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellín v. Texas*, 552 U.S. 491, 506 (2008). We must interpret the text "in good faith in accordance with the ordinary meaning to be given to the terms

---

[6] The other three provisions in Article 4 provide that:

> 1. Each Party shall take such measures as may be necessary to establish its jurisdiction over the bribery of a foreign public official when the offence is committed in whole or in part in its territory.
>
> 2. Each Party which has jurisdiction to prosecute its nationals for offences committed abroad shall take such measures as may be necessary to establish its jurisdiction to do so in respect of the bribery of a foreign public official, according to the same principles.
>
> 4. Each Party shall review whether its current basis for jurisdiction is effective in the fight against the bribery of foreign public officials and, if it is not, shall take remedial steps.

The Convention, art. 4.1, 4.2, and 4.4.

7

of the treaty in their context and in light of its object and purpose." *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 638 (5th Cir. 1994). Only if the language of a treaty, when read in the context of its structure and purpose, is ambiguous may we "resort to extraneous information like the history of the treaty, the content of negotiations concerning the treaty, and the practical construction adopted by the contracting parties." *Id.* (citing *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 535 (1991)). Finally, we may not "alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial," for to do so "would be . . . an usurpation of power, and not an exercise of judicial function." *Id.* (quoting *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 135 (1989)).

Applying these canons, we conclude that the plain language of Article 4.3 does not prohibit two signatory countries from prosecuting the same offense. Rather, the provision merely establishes when two signatories must consult on jurisdiction. Article 4.3 states that two signatories with concurrent jurisdiction over a relevant offense must, "at the request of one of them," consult on jurisdiction. The phrase "at the request of one of them" is a dependent clause that conditions the consultation requirement on the existence of a request. Where no such request is made, then, the ordinary reading of Article 4.3 is that consultation is not required. Jeong is therefore incorrect that the provision requires consultation in every instance of concurrent jurisdiction. In the case at hand, the record shows that neither the United States nor South Korea requested consultation on their concurrent jurisdiction to prosecute Jeong. That they did not consult on jurisdiction, therefore, does not violate Article 4.3.

Even if the United States and South Korea had been required to consult on jurisdiction, however, it would not follow that only one of the two nations could prosecute Jeong. Article 4.3 requires that consultation be made "with a

view to determining the most appropriate jurisdiction for prosecution." Jeong argues that because the provision uses the singular, not plural, form of "jurisdiction," prosecution of an offense may be had in only one jurisdiction. But this reading impermissibly engrafts additional requirements on the clause, and we may not "alter, amend, or add to" the plain language of a treaty. *Kreimerman*, 22 F.3d at 638. The plain language of the clause provides that where consultation is required, the parties need only consult *"with a view* to determin[e]" the jurisdictional question—they need not actually answer it. And, most significantly, the provision requires nothing more than consultation upon request; it does not require any additional actions of the party countries.

**B.**

Jeong argues in the alternative that the United States "waived its jurisdiction" to prosecute him. He asserts that the United States impliedly waived jurisdiction when it helped South Korea investigate Jeong's role in the bribery scheme, and expressly waived jurisdiction when, in its request for mutual legal assistance, it stated that it was "not seeking to further prosecute Jeong." Implicit in Jeong's argument is a presumption that although the United States and South Korea both had the right to prosecute him for his offenses, only one of the two countries was permitted to exercise that right. Operating under this presumption, Jeong argues that the United States impliedly and expressly ceded its right of prosecution to South Korea.

In an omission fatal to his argument, however, Jeong fails to identify any source of domestic or international law that permits such a presumption. At the outset, we note that it is doubtful whether Jeong has recourse in domestic law. For instance, we have held that the Double Jeopardy Clause of the Fifth Amendment "only bars successive prosecutions by the same sovereign." *United States v. Villanueva*, 408 F.3d 193, 201 (5th Cir. 2005); *see also United States v.*

No. 09-11127

*Martin*, 574 F.2d 1359, 1360 (5th Cir. 1978) ("The Constitution of the United States has not adopted the doctrine of international double jeopardy.") (citing *Bartkus v. Illinois*, 359 U.S. 121, 128 n.9 (1959)).  Double jeopardy thus does not attach when separate sovereigns prosecute the same offense, as here.

In addition, Jeong has not pointed us to any applicable international law that limits the United States' jurisdiction over the offenses in this case—nor have we found any in our own research.  There are three accepted sources of international law in the United States: customary international law, international agreement, and "general principles common to the major legal systems of the world."  RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 102(1) (1987) (hereinafter RESTATEMENT).  *See also Sosa v. Alvarez-Machain*, 542 U.S. 692, 733–34 (2004) (under the long-recognized sources of international law, "[w]here there is no treaty, and no controlling executive or legislative act or judicial decision, resort must be had to the customs and usages of civilized nations").  The "exercise of jurisdiction by courts of one state that affects interests of other states is now generally considered as coming within the domain of customary international law and international agreement."  RESTATEMENT ch. 2, intro. note.  Jeong, however, has not cited any relevant international agreement or custom applicable here.  Because Jeong has not identified—nor does the record show—a legal agreement between the United States and South Korea that would permit a conclusion of jurisdictional waiver in this case, we simply lack a basis in which to evaluate Jeong's waiver claims.  For the same reason, the cases Jeong cites in support of his argument are inapt: those cases assess waiver in the context of treaty agreements that define jurisdiction.[7]  We must therefore conclude that Jeong's waiver claim fails.

---

[7] Jeong relies most, for instance, on *Wilson v. Girard*, 354 U.S. 524 (1957).  In *Wilson*, Japan and the United States entered into an agreement under the terms of a bilateral treaty.

No. 09-11127

### III.

Jeong's arguments on appeal, in essence, challenge the propriety of his prosecution by the United States. In this context, we reiterate that "the decision to prosecute is particularly ill-suited to judicial review," and that for this reason, the United States Government "retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (internal quotation marks omitted). The Attorney General and U.S. Attorneys "have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. CONST. art. II, § 3). Factors such as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Wayte*, 470 U.S. at 607. Similarly, we are ill-equipped to consider how the prosecution of a foreign national might, if at all, impact diplomatic relations between two countries. In this case, the Executive Branch chose to prosecute Jeong in the United States, and we may evaluate only the specific

---

Under the agreement, the United States retained jurisdiction to prosecute Americans in the military for offenses committed in Japan. *Wilson*, 354 U.S. at 527. The agreement also provided that where the United States and Japan had concurrent jurisdiction, the United States would retain the primary right to exercise jurisdiction in certain specified circumstances. Japan would have the primary right in all other cases, and either country could waive jurisdiction, thereby ceding control to the other. *Id.* at 527–28. In Girard's case, both Japan and the United States claimed primary jurisdiction over his offenses, and this dispute produced an impasse between the two countries. *Id.* A joint committee of representatives from both countries concluded that the United States "had decided not to exercise, but to waive, whatever jurisdiction it might have in the case." *Id.* at 529. The Supreme Court, finding "no constitutional or statutory barrier" to the waiver provision, upheld the joint committee's finding. *Id.* at 530.

11

No. 09-11127

arguments Jeong raises on appeal.  We conclude that he has not demonstrated grounds for relief from this court.

The denial of Jeong's motion to dismiss the indictment is AFFIRMED.